# United States Court of Appeals
## For the First Circuit

No. 10-1396

VOICE OF THE ARAB WORLD, INC.,

Plaintiff, Appellant,

v.

MDTV MEDICAL NEWS NOW, INC.,

Defendant, Appellee,

ZAGLOUL E. AYAD; MASSACHUSETTS EYE AND EAR INFIRMARY;
BOSTON EYE GROUP; NEXT STEP PROSTHETICS;
BOSTON PUBLIC HEALTH COMMISSION,

Third Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Torruella, Boudin, Lipez,
Circuit Judges.

Robert B. Foster, with whom Rackemann, Sawyer & Brewster,
P.C., was on brief for appellant.
Jeffrey H. Greger, with whom Jeffrey H. Greger, PC and Lowe
Hauptman Ham & Berner LLP, was on brief for appellee.

May 27, 2011

**TORRUELLA**, **Circuit Judge**.  In this appeal, plaintiff-appellant Voice of the Arab World, Inc. ("VOAW") challenges the district court's interlocutory order granting defendant-appellee MDTV Medical News Now, Inc.'s ("Medical News Now") motion to preliminarily enjoin VOAW from the use, sale, or promotion of the mark "MDTV," or formative versions of that mark on the Internet, in connection with medical-related informational or educational programming or services.  Because we find that the district court abused its discretion in presuming that Medical News Now was likely to suffer irreparable harm in the absence of preliminary injunctive relief, we vacate the district court's preliminary injunction order and remand the case for further proceedings consistent with this opinion.

## I.  Facts and Procedural History

VOAW is a Massachusetts non-profit corporation whose alleged mission is to provide objective, current and accurate healthcare information to patients and physicians via radio, television, satellite broadcast and the Internet.  It claims to supply information to citizens of Arab and Muslim countries about healthcare options available in the United States.

Medical News Now, on the other hand, describes itself as a medical news organization and producer of the nationally broadcasted television series "MDTV Medical News Now," which the parties do not dispute has aired continuously since 1998.

## A.  First Use of the "MDTV" Mark in Commerce

The parties agree that Medical News Now began using the "MDTV" mark in commerce in January 1998 and has made continuous use thereof.  However, Medical News Now disputes VOAW's assertion that the latter has made continuous use of the "MDTV" mark in commerce since 1989.

VOAW alleges that it first made use of the "MDTV" mark in the production of television programs from 1989 through the mid-1990s.  Furthermore, it contends that in 1995 it began to make use of the mark in connection with its Internet website and has made continuous use ever since.  Medical News Now, however, challenges these assertions and maintains that they are contradicted by the record.  First, Medical News Now notes that, although VOAW's federal registration of the "MDTV" mark indicates that VOAW first used the mark in commerce in 1989, a sworn declaration signed by VOAW's President, Zagloul E. Ayad, on December 21, 1999 -- in connection with VOAW's application for state registration of the "MDTV" mark in Massachusetts -- establishes that VOAW's first use of the "MDTV" mark anywhere was on March 7, 1999.  Second, Medical News Now argues that VOAW's claim that it has been using the "MDTV" mark on the Internet since 1995 is belied by VOAW's own assertion that it registered the "mdtv" Internet domain names between

November 4, 1998 and February 1, 1999.[1]  Third, Medical News Now contends that the evidence in the record regarding VOAW's use of the "MDTV" mark prior to 1998 -- which consists primarily of certain e-mails and a declaration by Mr. Ayad -- is limited and unconvincing.  The district court agreed with Medical News Now and found that "evidence of any commercialization by VOAW prior to 1998 is either dubious, or worse, non-existent."  Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., No. 09-11505-GAO, 2010 U.S. Dist. LEXIS 16981, at *9-10 (D. Mass. Feb. 25, 2010).

## B.  Registration of the "MDTV" Mark

On October 9, 1998, Medical News Now filed applications with the United States Patent and Trademark Office ("USPTO") to register the marks "MDTV" and "MDTV Medical News Now," both in connection with certain commercial cable television broadcast and entertainment services.  The USPTO issued registrations in favor of Medical News Now for the "MDTV" (No. 2,655,243) and "MDTV Medical News Now" (No. 3,081,061) marks on December 3, 2002 and April 18, 2006, respectively.  Both registrations state that the marks were first used in commerce in January 1998.

On September 25, 2000, VOAW filed an application with the USPTO to register the "MDTV" mark in connection with providing the Arab and Muslim world with periodicals, information and educational

---

[1]  Between November 4, 1998 and February 1, 1999, VOAW registered the following domain names: mdtv.net, mdtv.org, and mdtv.com.

-4-

services in the field of medicine via radio, television, satellite broadcast and the Internet. The USPTO initially refused VOAW's application, stating that Medical News Now's prior registration stood as a barrier. However, the USPTO later approved VOAW's application and issued a registration (No. 3,497,465) in its favor on September 9, 2008.[2] It is unclear what the reasoning was behind the USPTO's initial rejection and later approval of VOAW's application to register the "MDTV" mark. Nevertheless, the district court found that Medical News Now's earlier registration has priority.

## C. History of Delay in Seeking Injunctive Relief

On January 11, 2000, Medical News Now, through its counsel, sent VOAW a cease-and-desist letter threatening to bring a trademark infringement action against VOAW unless certain questions regarding the use of the "MDTV" mark were answered. The letter strongly urged VOAW to "select an alternative mark for [its] services so as to avoid even the possibility of confusion" and gave VOAW fifteen days to respond. After receiving the letter, VOAW did not cease to use the "MDTV" mark and Medical News Now took no legal action. Rather, as previously mentioned, later that year -- on

---

[2] VOAW also owns a Massachusetts state trademark registration for the mark "MDTV." It received the state registration on January 27, 2000 for use in connection with periodicals on medical information and distance learning in the medical field.

September 25, 2000 -- VOAW applied for federal registration of the "MDTV" mark.

In September 2001, Medical News Now offered to pay VOAW $300 per month for a banner advertisement or landing page on VOAW's website (at mdtv.com) that would direct Internet users to Medical News Now's own website (at mdtv.now.com).  The parties, however, were unable to reach an agreement at that time.

Subsequently, in August 2002, Medical News Now, through its counsel, offered to enter into an agreement with VOAW whereby VOAW would have been required to, among other things, (1) withdraw its pending federal application for the "MDTV" mark, (2) allow Medical News Now's pending federal application to mature into registration and not challenge Medical News Now's rights to the mark, and (3) use its trade name "Voice of the Arab World" on the opening splash page or first page of all promotions or advertisements that used the "MDTV" mark.  In exchange, Medical News Now offered to, among other things, (1) refrain from challenging VOAW's continued use under common law of the "MDTV" mark, and (2) pay VOAW a fee of $500 per month to rent use of the domain address "www.mdtv.com."  The parties, nevertheless, were unable to finalize this proposed agreement.

The parties did, however, later reach a verbal agreement in 2005 under which Medical News Now promised to pay $600 per month to VOAW for the latter to host a banner advertisement (on its

website) that would refer interested users to Medical News Now's own website.[3] However, Medical News Now soon lost interest in the banner referral -- apparently because it produced little or no traffic -- and in 2006 requested that VOAW discontinue it. The record shows that the parties' relationship soured further during this time. While VOAW attempted to collect allegedly due and unpaid banner rental fees, Medical News Now asserted that VOAW misleadingly induced it into renting the banner by providing false information concerning the expected traffic.

On September 29, 2008, Medical News Now filed a petition in the USPTO to cancel VOAW's registration (No. 3,497,465) of the "MDTV" mark. This proceeding is now pending before the Trademark Trial and Appeal Board.

Subsequently, in August 2009, VOAW made changes to the text appearing on at least one of its static webpages by (1) declaring a wider scope of intended services, (2) providing Internet links to certain medical entities, and (3) creating subdomain names. The district court found significant that "the revised version of the websites deleted any limiting references to the 'Muslim and Arab world.'" Voice of the Arab World, Inc., 2010 U.S. Dist. LEXIS 16981, at *8.

_____

[3] The record is not clear as to whether this verbal agreement contained any further terms regarding the use of the "MDTV" mark.

-7-

On August 14, 2009, Medical News Now sent VOAW a letter threatening to file an action for trademark infringement and domain name cybersquatting unless VOAW agreed to transfer the "mdtv" domain names to Medical News Now in exchange for a nominal sum. Thereafter, on September 10, 2009, VOAW filed an action in the district court seeking declaratory judgment (1) that it had a right to use and register the "MDTV" mark, and (2) that its activities did not infringe upon Medical News Now's purported rights in the "MDTV" mark, or constitute domain name cybersquatting.

Medical News Now responded on November 24, 2009, by bringing counterclaims against VOAW for trademark infringement, unfair competition and cybersquatting. In addition, on November 25, 2009, Medical News Now moved to preliminarily enjoin VOAW from using the "MDTV" mark. On February 25, 2010, the district court granted Medical News Now's motion and issued an order preliminarily enjoining VOAW from the use, sale or promotion of the "MDTV" mark or formative versions thereof on the Internet, in connection with medical-related information or educational programming or services. VOAW appeals the district court's preliminary injunction order.[4]

---

[4] We have jurisdiction under 28 U.S.C. § 1292(a)(1) to hear this appeal from the district court's grant of an interlocutory injunction.

-8-

## II.  **Standard of Review**

On appeal, we review the district court's grant of a preliminary injunction for abuse of discretion. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008). "Within that framework, findings of fact are reviewed for clear error and issues of law are reviewed de novo." Id. "[W]e will set aside a district court's ruling on a preliminary injunction motion only if the court clearly erred in assessing the facts, misapprehended the applicable legal principles, or otherwise is shown to have abused its discretion." Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005). "A material error of law constitutes an abuse of discretion." González-Fuentes v. Molina, 607 F.3d 864, 875 (1st Cir. 2010), cert. denied, 131 S. Ct. 1568 (2011).

## III.  **Discussion**

VOAW challenges the district court's preliminary injunction order on three grounds. First, VOAW alleges that the district court erred in finding that Medical News Now demonstrated a likelihood of success on the merits of its trademark infringement claim. Second, VOAW avers that the district court erred as a matter of law by presuming that Medical News Now would likely suffer irreparable harm in the absence of preliminary injunctive relief, and not requiring Medical News Now to actually demonstrate such likelihood of irreparable harm. Third, VOAW contends that,

even if a preliminary injunction was appropriate, the district court nevertheless abused its discretion by issuing an overly broad injunction.

VOAW's argument on the irreparable harm issue is two-fold. First, VOAW maintains that presuming irreparable harm in trademark infringement cases where preliminary injunctive relief is sought is inconsistent with the Supreme Court's opinion in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006). Second, VOAW contends in the alternative that, even if irreparable harm may be presumed in certain trademark infringement cases, such presumption cannot apply here, in light of Medical News Now's excessive delay in seeking injunctive relief.

As discussed below, we agree that the traditional equitable principles discussed by the Supreme Court in eBay apply in the present case. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1228 (11th Cir. 2008) (concluding that the principles of eBay applied to a request to preliminarily enjoin alleged trademark infringement, but declining to decide whether such principles precluded the district court from presuming irreparable harm). However, it is unnecessary to decide at this time whether the rule relied upon by the district court (i.e., irreparable harm is presumed upon a finding of likelihood of success on the merits of a trademark infringement claim) is consistent with such principles, because -- even if we assume

without deciding that such rule is good law -- we still find that the district court abused its discretion in applying such a presumption here. This is due to the fact that such presumption has been held inapplicable in cases where, as here, the plaintiff delays excessively in seeking injunctive relief.

Accordingly, we find that the district court erred as a matter of law in presuming irreparable harm and, thus, abused its discretion. We, therefore, vacate the district court's preliminary injunction order and remand the case.[5]

We begin our discussion by delineating the applicable preliminary injunction standard. In doing so, because there seems to be confusion in some district courts as to whether the principles of eBay apply to preliminary injunctions of alleged trademark infringement, see, e.g., Operation Able of Greater Bos., Inc. v. Nat'l Able Network, Inc., 646 F. Supp. 2d 166, 176-77 (D. Mass. 2009), we clarify certain aspects concerning the application of eBay in this context.

## A. Preliminary Injunction Standard

"A preliminary injunction is an 'extraordinary and drastic remedy,'" Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

---

[5] Accordingly, it is unnecessary to address VOAW's allegations that the district court erred in finding that Medical News Now established a likelihood of success on the merits of its trademark infringement claims or its contention that the preliminary injunction was, in any event, overly broad.

-11-

Federal Practice and Procedure § 2948, at 129 (2d ed. 1995) [hereinafter "Wright & Miller"]), that "is never awarded as of right." Id. at 690. Rather, as the Supreme Court recently reaffirmed, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008).

"The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Weinberger v. Romero-Barceló, 456 U.S. 305, 312 (1982); see also 11A Wright & Miller § 2948.1, at 139 (noting that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered"). Thus, "[a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." Romero-Barceló, 456 U.S. at 312 (internal quotation marks omitted).

This circuit has previously held that "a trademark plaintiff who demonstrates a likelihood of success on the merits

creates a presumption of irreparable harm." Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 3 (1st Cir. 1997) (citing Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992); Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989); Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 14-15 (1st Cir. 1986)). However, the validity of this rule has been called into question by the Supreme Court's recent opinion in eBay.

In eBay, the Supreme Court reviewed a request for permanent injunction in a patent infringement case and held that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." 547 U.S. at 394. The Supreme Court concluded that neither the district court nor court of appeals fairly applied these traditional equitable principles. Id. at 393.

Specifically, the Supreme Court noted that the district court "appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases." Id. For example, the district court concluded that a "plaintiff's willingness to license its patents" and "its lack of commercial

-13-

activity in practicing the patents" was sufficient to establish that the plaintiff would suffer no irreparable harm in the absence of injunctive relief. Id. (internal quotation marks omitted). The Supreme Court found that "traditional equitable principles do not permit such broad classifications" and concluded that the district court's adoption of a "categorical rule . . . cannot be squared with the principles of equity adopted by Congress." Id.

The Supreme Court also rejected the reasoning of the court of appeals, which had reversed the district court and granted injunctive relief. Specifically, the Supreme Court found that the court of appeals had improperly "departed in the opposite direction" by establishing a "'general rule,' unique to patent disputes, 'that a permanent injunction will issue once infringement and validity have been adjudged[,]'" except "in the 'unusual' case, under 'exceptional circumstances' and 'in rare instances . . . to protect the public interest.'" Id. at 393-94 (quoting MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1338-39 (Fed. Cir. 2005)) (some internal quotation marks omitted).

Although eBay dealt with the Patent Act, in the context of a request for permanent injunctive relief, we see no principled reason why it should not apply in the present case. See N. Am. Med. Corp., 522 F.3d at 1228.

First, the text and logic of eBay strongly suggest that the traditional principles of equity it discussed should be

-14-

presumed to apply whenever a court must determine whether to issue an injunction, whether the case is a patent case or any other type of case. In this regard, it is significant that the Court in eBay supported its formulation of the traditional four-factor permanent injunction standard by citing cases that were unrelated to patent law. Specifically, the Court cited Romero-Barceló, 456 U.S. at 311-13, which involved a permanent injunction issued after a finding that the defendant violated the Federal Water Pollution Control Act, and Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987), which related to a request to preliminarily enjoin an alleged violation of § 810 of the Alaska National Interest Lands Conservation Act. See eBay, 547 U.S. at 391. The Court then analyzed whether the traditional equitable principles set forth in these cases applied in the patent law context and answered in the affirmative, noting that "'a major departure from the long tradition of equity practice should not be lightly implied,'" id. (quoting Romero-Barceló, 456 U.S. at 320), and finding that "[n]othing in the Patent Act indicate[d] that Congress intended such a departure," id. at 391-92. Similarly, nothing in the Lanham Act indicates that Congress intended to depart from traditional equitable principles. Rather, like the Patent Act,[6] the Lanham Act

---

[6] Section 283 of Title 35 of the United States Code provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

provides a court the "power to grant injunctions, <u>according to the</u> <u>principles of equity</u> and upon such terms as the court may deem reasonable, to prevent[,]" among other things, trademark infringement and domain name cybersquatting. 15 U.S.C. § 1116(a) (emphasis added). This provision codifies the traditional equitable remedy of injunction. <u>See</u> 3-14 Anne Gilson LaLonde, <u>Gilson on Trademarks</u> § 14.02[1] (2011) ("The 'principles of equity' mentioned in [15 U.S.C. § 1116] are those that have been established by equity courts in many types of equity cases for years.").

Second, the fact that <u>eBay</u> dealt with a permanent injunction does not change our conclusion that its principles are equally applicable in the context of preliminary injunctions. This conclusion is buttressed by the logic and language of <u>eBay</u>, which, as previously mentioned, supported its formulation of the traditional four-factor test by citing <u>Amoco Production Co.</u>, a case that involved a request for a preliminary injunction. <u>See</u> <u>eBay</u>, 547 U.S. at 391. Our conclusion is also consistent with Supreme Court precedent, which has repeatedly recognized that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." <u>Amoco Prod. Co.</u>, 480 U.S. at 546 n.12, <u>cited with</u> <u>approval in</u> <u>Winter</u>, 129 S. Ct. at 381.

Based on the above, we conclude that a request to preliminarily enjoin alleged trademark infringement is subject to traditional equitable principles, as set forth by the Supreme Court in eBay, and more recently in Winter, which also discusses such principles.[7] We, however, decline to address at this time the full impact of eBay and Winter in this area. For example, we do not address whether our previous rule, relied upon by the district court, i.e., "that a trademark plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm," see Johnson-Powell, 129 F.3d at 3, is consistent with traditional equitable principles. In other words, we decline to decide whether the aforementioned presumption is analogous to the "general" or "categorical" rules rejected by the Supreme Court in eBay.[8] See eBay, 547 U.S. at 393-94. Our reasons for deferring

---

[7] In Winter, the Supreme Court reaffirmed that its "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." 129 S. Ct. at 375 (first emphasis added).

[8] The Supreme Court has still not determined whether it is consistent with traditional equitable principles for a court to presume irreparable harm once it concludes that a trademark infringement claim is likely to succeed on the merits. At least two courts of appeal (the Fifth and Eleventh Circuits) have questioned whether such a presumption is consistent with these principles, in light of eBay, but have declined to conclusively answer the question. See Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 313 (5th Cir. 2008); N. Am. Med. Corp., 522 F.3d at 1228. Furthermore, although the Ninth Circuit applied the presumption in Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009), it did so without discussing the impact of eBay. In addition, district courts have split on the issue. Compare Marks Org., Inc. v. Joles, No. 09 CV

this question are two-fold.  First, the parties' briefs were inadequate on this particular issue.  Second, it is unnecessary to decide this question here because -- even if we assume without deciding that said presumption is good law -- we still find that the district court abused its discretion in applying the presumption here, in light of the fact that such presumption has been held inapplicable in cases where the party seeking injunctive relief excessively delays in seeking such relief.

**B.  Analysis**

It has been held that any presumption of irreparable harm that may arise upon a finding of likelihood of success on the merits of a trademark infringement claim "is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief."  Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995).  The reasoning behind this principle is that "the 'failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'"  Id. (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273,

10629(KMW), 2011 U.S. Dist. LEXIS 28182, at *21 (S.D.N.Y. Mar. 16, 2011) (finding that "courts may not presume irreparable injury from a showing of likelihood of success on merits" of a trademark infringement claim), with TMX Funding, Inc. v. Impero Techs., Inc., No. C 10-00202 JF (PVT), 2010 U.S. Dist. LEXIS 68893, at *20 (N.D. Cal. July 8, 2010) (finding that courts may validly presume irreparable harm upon a showing of likelihood of success on the merits of a trademark infringement claim).

277 (2d Cir. 1985)). However, it has also been held that the aforementioned presumption may still operate where "the delay was caused by the plaintiff's ignorance of the defendant's competing product or the plaintiff's making good faith efforts to investigate the alleged infringement." Id.

In the present case, the district court suggested that the fact that Medical News Now knew of and acquiesced to VOAW's use of the "MDTV" mark for almost ten years meant that, prior to August 2009 (i.e., the date of the alleged changes to VOAW's websites), Medical News Now's claims of irreparable harm would have been rejected. See Voice of the Arab World, Inc., 2010 U.S. Dist. LEXIS 16981, at *10 (noting that "Medical News Now apparently would not disagree with [the] proposition" that its claims of irreparable harm would have been rejected if VOAW had not revised its websites in August 2009). However, the district court found that the deletion from VOAW's websites (in August 2009) of the limiting reference to a particular geographic or ethnic/cultural market, i.e., the "Muslim and Arab World," "changed the calculus." Id. at *8, *10. Thus, although the district court suggested that any presumption of irreparable harm had become inoperative prior to August 2009, the court found that such presumption was later revived as a result of the revisions to VOAW's websites in August 2009, and was still operative when Medical News Now sought

injunctive relief on November 25, 2009.  See id. at *11-*12.  We disagree.

Medical News Now has known of VOAW's allegedly infringing use of the "MDTV" mark since at least January 2000, when it sent VOAW a letter requesting certain information and strongly suggesting that VOAW cease using the mark.  In the following years, the parties continuously disputed each other's rights over the mark.  The parties engaged in negotiations on various occasions, including in August 2002, at which time Medical News Now offered to, among other things, refrain from challenging VOAW's continued use under common law of the "MDTV" mark and, in exchange, requested, among other things, that VOAW withdraw its pending application for federal registration of the mark and agree to use its trade name "Voice of the Arab World" as a limiting reference on all promotions and advertisements that used such mark.  Significantly, during various months in 2005 and 2006, Medical News Now paid VOAW a fee of $600 per month for the rent of a banner advertisement on VOAW's website.  Therefore, Medical News Now was well aware of VOAW's use of the "MDTV" mark and cannot claim that the nearly ten-year delay between the time that it purportedly first became aware of VOAW's allegedly infringing trademark uses (i.e., January 2000) and when it finally sought preliminary injunctive relief (i.e., November 25, 2009) was due to good faith investigation efforts.  Neither can Medical News Now attribute such

-20-

delay merely to its attempts at reaching a settlement with VOAW, since the record does not show significant negotiations after 2006. Accordingly, we find that Medical News Now's business dealings with VOAW (particularly, the banner rental in 2005 and 2006), combined with its delay in seeking injunctive relief, indicate acquiescence.

Furthermore, assuming without deciding that the district court was correct in finding that the August 2009 revisions to VOAW's websites "at least theoretically increased" the likelihood of confusion in the U.S. market, see Voice of the Arab World, Inc., 2010 U.S. Dist. LEXIS 16981, at *10, we find, as further explained below, that Medical News Now's subsequent delay in seeking injunctive relief along with the minimal likelihood of a qualitatively new harm arising from those revisions, precludes Medical News Now from enjoying the benefit of a presumption of irreparable harm.

First, we note that the revisions to VOAW's websites occurred in August 2009. On August 15, 2009, Medical News Now sent VOAW a letter noting these changes and threatening to take legal action against VOAW unless VOAW agreed to transfer the "mdtv" domain names to Medical News Now in exchange for a nominal sum. Yet, it is significant that Medical News Now did not seek preliminary injunctive relief until November 25, 2009, and only did so after VOAW first sued for declaratory judgment on September 10, 2009. Consistent with its multi-year delay in resolving the

-21-

underlying disagreement, Medical News Now's leisurely pace and lack of urgency undercut a presumption of irreparable harm.

Second, assuming without deciding that Medical News Now was at one point entitled to benefit from a presumption of irreparable harm, we disagree with the district court that the August 2009 revisions to VOAW's websites -- mainly, deleting the limiting reference to the "Muslim and Arab world" -- justify a renewal of such presumption.  See Bourne Co. v. Tower Records, Inc., 976 F.2d 99, 102 (2d Cir. 1992) (interpreting Citibank, 756 F.2d 273, as holding that "acquiescence in an infringement rebuts the presumption of irreparable harm where the allegedly 'new' use does not inflict harm qualitatively different from the harm flowing from the prior infringement").  The harm allegedly flowing from the August 2009 changes was not sufficiently qualitatively different from the harm purportedly flowing from the prior alleged infringement, since it was reasonably foreseeable for Medical News Now that VOAW could at some point revise its websites in such fashion.  See id. (noting that, in order for the presumption of irreparable harm to be revived, "the perceived harm from the new use must be so qualitatively different from the harm flowing from the prior uncontested use that the injured party could not reasonably foresee the new harm").  This foreseeability is evidenced by the fact that, back in August 2002, Medical News Now requested that VOAW use its trade name "Voice of the Arab world" as

-22-

a limiting reference whenever VOAW used the "MDTV" mark. VOAW refused to comply with this request and never agreed to include any limiting references while using the mark. Significantly, VOAW's federal registration for the "MDTV" word mark, which was approved on September 9, 2008, does not require that VOAW's use of said word mark on the Internet be accompanied by a limiting reference to the "Muslim and Arab world." It appears that this reality influenced Medical News Now's decision to file a petition in September 29, 2008 before the USPTO to cancel VOAW's registration. Yet, Medical News Now did not seek preliminary injunctive relief until November 25, 2009.

In sum, assuming without deciding that a court may presume irreparable harm upon a finding of likelihood of success on the merits of a trademark infringement claim and that Medical News Now was at one point entitled to benefit from such a presumption, the presumption was inoperative as of August 2009 and was not renewed by the revisions to VOAW's websites.

Based on the above, we conclude that the district court abused its discretion by improperly presuming that, in the absence of preliminary injunctive relief, Medical News Now would suffer irreparable harm before a decision on the merits could be rendered, and ordering such relief without making an explicit finding on

whether Medical News Now had demonstrated a likelihood of irreparable harm.[9]

## IV.  Conclusion

For the reasons stated, although we decline to decide at this time whether a court may shift the burden of proof by allowing a trademark plaintiff to benefit from a presumption of irreparable harm upon a finding of likelihood of success on the merits -- in light of the Supreme Courts' opinions in eBay, 547 U.S. 388, and more recently in Winter, 555 U.S. 7 -- we do conclude that the district court erred as a matter of law by applying such presumption here and, thus, abused its discretion.  We, therefore, vacate the district court's preliminary injunction order and remand the case for a proper consideration of the preliminary injunction standard, consistent with this opinion.

**Vacated and Remanded for further proceedings consistent with this opinion.  Each side shall bear its own costs on this appeal**.

---

[9]  Because the district court merely relied on a presumption of irreparable harm and made no explicit finding on whether Medical News Now demonstrated that, absent preliminary injunctive relief, it would likely suffer irreparable harm before a decision on the merits is rendered, we issue no opinion on this ultimate question. Rather, we only hold that Medical News Now cannot benefit from such a presumption, and we adopt no general or categorical rule as to whether a plaintiff may demonstrate irreparable harm in these types of cases.  See eBay, 547 U.S. at 393-94.