# United States Court of Appeals
## For the First Circuit

No. 10-2359

WALTER MERCADO-SALINAS; ASTROMUNDO, INC.,

Plaintiffs, Appellants,

v.

BART ENTERPRISES INTERNATIONAL, LTD; WALTER INTERNATIONAL
PRODUCTIONS, INC.; WALTERVISION PRODUCTIONS, INC.; WALTER MERCADO
RADIO PRODUCTIONS, INC.; WALTER MERCADO ENTERPRISES CORP.;
GUILLERMO BAKULA; ARCANE CREATIVE, LLC; WATERVISION, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

María D. Bertólez and María D. Trelles-Hernández, with
whom Néstor M. Méndez-Gómez, Pietrantoni Méndez & Alvarez LLP, John
F. Nevares, Pedro Quiñones Suárez, and John F. Nevares and
Associates PSC were on brief, for appellants.
Laura Beléndez-Ferrero, with whom Cristina Arenas Solís,
and Ferraiuoli LLC were on brief, for appellees.

December 20, 2011

**LYNCH**, **Chief Judge**.  In 1995, Walter Mercado-Salinas, a popular psychic and astrologer, and Bart Enterprises entered into a contract (the "Agreement") for the production and distribution of materials featuring Mercado's psychic and astrological services.  Under the Agreement, Mercado granted Bart the right to use the "Walter Mercado" trademark, as well as Mercado's name and likeness.

In 2006, however, a dispute arose when Mercado ceased providing services and Bart ceased to pay Mercado's monthly compensation.  This led to litigation in federal court in Florida in which a jury, inter alia, rejected Mercado's claim that he had validly terminated the Agreement, found that he had violated the Agreement, and found that Bart owed Mercado no compensation.

In 2009, both parties sought injunctive relief from the U.S. District Court for the District of Puerto Rico to prevent the other party from using the "Walter Mercado" trademark.  Finding that Mercado assigned Bart the rights to the trademark in perpetuity and that Mercado had not validly terminated the Agreement, the district court denied Mercado's request for preliminary injunctive relief and granted preliminary injunctive relief to Bart.  Mercado-Salinas v. Bart Enters. Int'l, Ltd., 747 F. Supp. 2d 265 (D.P.R. 2010).

We conclude that the district court did not abuse its discretion in doing so.  We affirm.

I.

A.        The Agreement

On August 4, 1995, Mercado and Bart signed the Agreement, under which Bart would develop and distribute materials and products related to Mercado's psychic and astrological services. As part of the Agreement, Mercado granted Bart several rights "during the Term and throughout the Territory" of the Agreement. The Agreement defines "Territory" as the universe. See Agreement § 4, at 5.  It defines "Term" to mean "in perpetuity," subject to a termination provision which, inter alia, allows Mercado to terminate the Agreement after fifteen days' written notice if Bart fails to pay Mercado any agreed compensation within sixty days of the due date.[1]  Id. § 5, at 5; § 12(a)(iii), at 13-14.

First, Mercado "irrevocably assign[ed] to Bart throughout the Territory during the Term, all right, title and interest, including all copyrights" in certain "Preexisting Materials" that Mercado had previously created for the business entity Jamie Shoop & Associates Inc.  See id. § 1(a), at 2.

Second, Mercado "grant[ed] to Bart the exclusive right and license during the Term and throughout the Territory to develop, produce, distribute and copyright in its own name new

_____

[1]    The termination provision also provides that "Mercado shall have the right to terminate this Agreement immediately . . . in the event of a material breach by Bart which remains uncured for a period of ten (10) days following written notice thereof." Agreement § 12(a)(ii), at 13.

-3-

materials, in any language, relating to Mercado's psychic and astrological services" (the "New Materials").  Id. § 1(b), at 3.

Most pertinently, the parties to the Agreement "acknowledge[d] that the mark 'Walter Mercado' has . . . attained the status of a common law trademark and service mark" by virtue of its "use and associat[ion] with the Preexisting Materials."  Id. § 2(a), at 3.  The Agreement then states:

> Mercado hereby irrevocably assigns to Bart throughout the Territory during the Term, all right, title and interest in and to the Mark, together with that part of the goodwill of Mercado's business connected with and symbolized by said Mark, for use in connection with the Pre-existing Materials and the New Materials, if any.  Such assignment includes but is not limited to the right to use the Mark in connection with Preexisting Materials and the New Materials in any and all media now known or hereafter developed . . . , the right to merchandise and the right to utilize the Mark in all advertising, promotion and publicity created in connection therewith.

Id. § 2(b), at 4.  Additionally, the Agreement provides:

> Bart shall have all rights in the Mark which are afforded to owners of trademarks and service marks, including but not limited to the right to seek and obtain trademark protection and/or registration of the Mark in its name, and the right to enforce or defend Bart's rights against third parties.[2]

_____

2       On October 8, 1996, Bart filed an application for the "Walter Mercado" trademark with the U.S. Patent and Trademark Office (PTO).  Mercado executed an affidavit in connection with that application on July 11, 1997, stating that he authorized Bart to register "Walter Mercado," "Walter," and "Walter Mercado Salinas" as trademarks and that he "granted to [Bart] all rights of ownership and authority to any and all of the [aforementioned]

<u>Id.</u> § 2(c), at 4.

Mercado also "grant[ed] to Bart the right and license during the Term and throughout the Territory to use Mercado's performance, name, signature, photographs, voice, picture, likeness, or other indicia of his identity . . . subject, however, to Mercado's right to prior approve any such use." <u>Id.</u> § 3(b), at 5. The parties agreed that "such approval [is] not to be unreasonably withheld" and that "[i]f such approval is not communicated to Bart within forty-eight (48) hours of Mercado's receipt of the materials, such right of approval shall be deemed waived." <u>Id.</u>

Finally, Mercado agreed to provide psychic and astrological services for the creation of the New Materials during an "Additional Services Period," a ten-year term to be "automatically extended for additional two (2) year periods at the option of Bart." <u>Id.</u> § 6(b)(i)-(ii), at 6. "The parties agree[d] that any and all New Materials or parts thereof created or supplied

---

trademark names." In October 1997, Mercado also filed with the Mexican Patent Office an affidavit granting Bart the right to register the trademark in Mexico. On December 4, 2004, the PTO cancelled the trademark application "because [the] registrant did not file an acceptable declaration." <u>See</u> U.S. Trademark Application Serial No. 75-185030 (filed Oct. 8, 1996). A few months later, on May 5, 2005, Mercado executed and filed with the PTO a "Consent of Living Individual" on the "understand[ing] that consent of a living individual is required in order for a personal name to be used and registered as a trademark." Bart filed a second application for the "Walter Mercado" trademark on May 14, 2007. <u>See</u> U.S. Trademark Application Serial No. 77-180667 (filed May 14, 2007). The application is still pending. <u>Id.</u>

by Mercado shall be deemed works made for hire as such term is defined pursuant to the United States Copyright Law . . . or relevant jurisdiction copyright law . . . ." Id. § 6(b)(iii), at 7. United States copyright law, in turn, provides that the copyright in a "work made for hire" vests in the employer rather than the employee. 17 U.S.C. § 201(b). The parties further agreed that "[i]n the event that any of the results of Mercado's services are not copyrightable . . . or for any reason are deemed not to be works made for hire, then . . . Mercado hereby assigns all right, title and interest in and to the results of his services to Bart." Agreement § 6(b)(iii), at 7.

In return, "Bart agree[d] to pay to Mercado, in consideration of all services rendered by Mercado and the use of the results thereof and all rights granted by Mercado to Bart," compensation consisting of a $25,000 base salary per month, $5,000 per month for costumes, $2,000 per month for up to twenty-five three-minute segments per month, and additional fees contingent upon gross income from sales in foreign countries. Id. § 6(c), at 7-8.

At the same time, the parties agreed that Mercado "shall be in no way hereunder prohibited or restricted, for his personal benefit, from conducting his present business endeavors consisting of radio, newspaper, magazines and personal consultation related to psychic activities." Id. § 6(c)(v), at 8.

-6-

Finally, the Agreement provides that "all grants granted or assigned by this agreement shall be irrevocable under all or any circumstances, and shall not be subject to rescission, termination or injunction. In the case of breach of this agreement by Bart, Mercado's sole remedy shall be limited to an action at law for damages." Id. § 13, at 15-16. The parties further agreed that any disputes under the Agreement would be governed by Puerto Rico law. Id. § 20(d), at 19.

B.      The Florida litigation

In the fall of 2006, Mercado ceased to provide services for new materials as provided under the Agreement and failed to appear for scheduled appearances. In November 2006, Bart halted its compensation payments to Mercado. Mercado formally attempted to terminate the Agreement by a letter dated November 22, 2006, citing Bart's failure to pay compensation. Mercado's company, Astromundo, Inc., also filed with the U.S. Patent and Trademark Office an application for the "Walter Mercado" trademark. See U.S. Trademark Application Serial No. 77-047157 (filed Nov. 17, 2006). This is one of the activities which ultimately caused Bart to seek injunctive relief against Mercado.

On January 17, 2007, Bart filed suit against Mercado in the federal court for the Southern District of Florida, alleging breach of contract and tortious interference with Bart's third-party contracts. Mercado counterclaimed for breach of

contract, breach of fiduciary duty, breach of the covenant of good faith, violation of copyright and trademark laws, unjust enrichment, and requested injunctive relief and a declaratory judgment that the Agreement was invalid because its term was "in perpetuity."

In the meantime, on February 8, 2007, Mercado filed suit against Bart in the federal court for the District of Puerto Rico. Mercado again alleged violation of copyright and trademark laws, and sought injunctive relief and a declaration that the Agreement was invalid. In October 2008, the Puerto Rico case was transferred to the Florida district court, and on November 18, 2008, the two cases were consolidated.

On cross-motions for summary judgment, the Florida district court held that the Agreement was valid. See Walter Int'l Prods., Inc. v. Mercado Salinas, No. 07-cv-20136, slip op. at 6-8 (S.D. Fla. Nov. 24, 2008). Importantly, the district court determined that the Agreement contains two different durational terms: (1) the term for which Mercado was obligated to provide services to Bart (the "Additional Services Term"), consisting of ten years plus optional two-year extensions; and (2) the term applicable to the assignment of the trademark and other rights (the "Term"), which is in perpetuity or until termination of the Agreement. Id. at 7. The district court then determined that because the trademark was "irrevocably assign[ed] to Bart . . .

-8-

during the Term" and because "the Term of the Agreement ends if Bart or Mercado exercise their rights to terminate the Agreement," the trademark rights would revert to Mercado upon termination. Id. at 15-16. The district court concluded that the question of whether the Agreement was properly terminated had to be decided by a jury before the court could determine who owned the trademark. Id. at 17.

The consolidated case was tried to a Florida jury in January 2009. On January 26, 2009, the jury returned a special verdict finding that Mercado had breached the Agreement by (1) failing to perform after November 22, 2006; (2) hiring another exclusive agent; and (3) improperly terminating the Agreement. The jury further found that Bart had not failed to pay any owed compensation to Mercado and thus had not breached the Agreement. On February 4, 2009, the Florida district court entered judgment in favor of Bart.[3]

The court did not reach the trademark infringement claim, stating that "[o]nce the jury found that Mercado, not Bart,

_____

[3] The jury also found that Mercado had interfered with Bart's contracts with third parties. The jury did not find, however, that Bart had suffered any damages resulting either from this interference or from Mercado's breach of contract. Therefore, the district court awarded no damages to Bart. Bart moved for a new trial on the issue of damages, but the district court denied the motion. See Walter Int'l Prods., Inc. v. Mercado Salinas, No. 07-cv-20136 (S.D. Fla. Oct. 26, 2009). Bart appealed the district court's decision to the Eleventh Circuit Court of Appeals, which affirmed the decision not to award Bart damages. See Walter Int'l Prods., Inc. v. Salinas, 650 F.3d 1402 (11th Cir. 2011).

-9-

breached the contract and that Mercado had not properly terminated the contract, the claim for trademark infringement became moot because, as stated in the order on the motions for summary judgment, the trademark rights revert to Mercado upon a valid termination of the agreement." Walter Int'l Prods., Inc. v. Mercado Salinas, No. 07-cv-20136, slip op. at 22 (S.D. Fla. Oct. 26, 2009).

C.        The Puerto Rico litigation

Despite the ruling against him by the Florida court, on March 20, 2009, Mercado sent Bart a letter demanding payment within fifteen days of $25,000 per month for the twenty-seven months that had elapsed between November 2006 and January 2009, amounting to a total of $675,000. Mercado's letter asserted that "the $25,000 per month [is] due and payable pursuant to clause 6(c)(i)" of the Agreement, and that "[t]he obligation to pay such amounts is independent of any service provided by Mr. Mercado." Mercado stated he reserved the right to declare the Agreement null and void pursuant to the termination clause if Bart did not make payment within fifteen days.

On March 30, 2009, Bart notified Mercado by letter that it would not pay the requested compensation. Bart asserted that no compensation was due because, as the Florida court had held, Mercado had ceased to provide services and thus had breached the Agreement. Bart also asserted its right to the "Walter Mercado"

-10-

trademark and requested that Mercado stop using the mark to unilaterally create new psychic and astrological materials.

On May 15, 2009, Mercado sent Bart a letter declaring the Agreement null and void pursuant to the termination clause of the Agreement because Bart had not paid the requested compensation. Having done so, Mercado also declared that the trademark and publicity rights reverted back to him. Mercado ordered Bart to cease and desist from using the trademark or Mercado's name or likeness.

Three days later, on May 18, 2009, Mercado[4] brought suit against Bart[5] in the Puerto Rico Court of First Instance. Mercado alleged breach of contract, trademark infringement, and infringement of publicity rights. Upon Bart's motion, the case was removed to the Puerto Rico federal district court. The parties filed cross-motions for preliminary injunctive relief, each seeking to prevent the other from using the "Walter Mercado" trademark.

The district court referred the motions to a magistrate judge for a report and recommendation. The magistrate judge determined that because the provisions granting trademark and

---

[4]     Plaintiffs are Mercado and Astromundo, Inc., a Puerto Rico corporation. Mercado is the president of Astromundo, Inc. We refer to the plaintiffs collectively as "Mercado."

[5]     Defendants are seven business concerns and their principal, Guillermo Bakula. All of the defendants in the case are citizens of Florida, except Bart Enterprises International, Ltd., which is a citizen of the Bahamas. We refer to the defendants collectively as "Bart."

publicity rights contain limiting language such as "in connection with Mercado's astrological and psychic activities," Bart's trademark and publicity rights are limited to those materials developed by or with Mercado during the Additional Services Term. Once the Additional Services Term ended and Mercado ceased providing services, the magistrate judge concluded, Bart could no longer create new products using the trademark. The magistrate judge recommended that the court grant Mercado's motion for a preliminary injunction against Bart's use of the trademark or Mercado's name or likeness in connection with any product that was created after the end of the Additional Services Term without Mercado's contribution or approval. Bart could, however, continue to use the trademark in connection with products or materials created with Mercado's approval during the Additional Services Term.

Both parties filed objections to the report and recommendation. On review, the district court denied Mercado's motion for a preliminary injunction because Mercado had not established that he was entitled to trademark protection. Mercado-Salinas, 747 F. Supp. 2d at 274. First, based on the plain text of the contract, the district court concluded that Mercado had perpetually assigned to Bart full rights to the trademark. Id. at 271-72. Applying the doctrine of collateral estoppel, the district court acknowledged the Florida district court's determination that

Mercado's assignment of rights was subject to reversion upon termination of the Agreement. Id. at 272-73. Next, the district court determined that Mercado did not validly terminate the Agreement. Id. at 273-74. Because Mercado had ceased to provide services, Bart had no obligation to pay him compensation and he therefore had no basis for terminating the Agreement. Id. The court denied Mercado's request for injunctive relief against Bart's use of the trademark and Mercado's request for injunctive relief regarding his publicity rights. Id. at 274.

Finding a likelihood of success regarding Bart's claim to the trademark, the district court granted Bart's motion for preliminary injunctive relief. Id. at 275. The injunction prohibited Mercado from "using the Mark, 'Walter Mercado,' in relation to all forms of business enterprise, and from representing to third-parties that Plaintiffs own the Mark." Id. This injunction was further narrowed.

On motion for reconsideration, the district court amended the preliminary injunction to bar Mercado from "(1) using the Mark, 'Walter Mercado,' in relation to all forms of business enterprise, except for business arrangements that commenced prior to June 7, 1995, and (2) representing to third parties that Plaintiffs own the Mark." Mercado-Salinas v. Bart Enters. Int'l, Ltd., 747 F. Supp. 2d 275, 279 (D.P.R. 2010). The district court's opinion and order expressly states that "the court's injunctive order relates only to

-13-

commercial use of the trademark."[6] Id. It is this more limited injunction, with that understanding, which is before us on appeal.

Mercado has appealed from the grant of this preliminary injunction and from the denial of his request for preliminary injunctive relief.

## II.

Before granting a preliminary injunction, a "court must consider (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). "In a trademark case, the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling." Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989).[7]

---

[6] Bart agrees, acknowledging that Mercado "can use his own name to identify himself."

[7] In a series of cases, this court has employed a presumption that irreparable harm exists if a trademark holder demonstrates a likelihood of success in establishing infringement. See, e.g., I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998). We have recognized there is a question as to whether this presumption can co-exist with a more recent Supreme Court case, eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006). See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645

-14-

A district court's conclusions on these factors and its determinations regarding their relative weighting engender deferential appellate review. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996). Thus, a decision to grant a preliminary injunction will stand unless the district court "mistook the law, clearly erred in its factual assessments, or otherwise abused its discretion in granting the interim relief." McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001); accord Massachusetts v. Watt, 716 F.2d 946, 947 (1st Cir. 1983) ("[A party] challenging the issuance of a preliminary injunction must

---

F.3d 26, 31 (1st Cir. 2011).

In eBay, the Supreme Court held that in considering whether to issue injunctive relief against use of a patent or copyright, courts may not "replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." eBay, 547 U.S. at 392-93. Instead, the Court explained that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." Id. at 394.

Although eBay dealt with the Patent Act and with permanent injunctive relief, we have stated that "the traditional equitable principles discussed by the Supreme Court in eBay apply" in trademark infringement cases where preliminary injunctive relief is sought. Voice of the Arab World, 645 F.3d at 31 (concluding that the principles of eBay applied to a request to preliminarily enjoin alleged trademark infringement, but declining to decide whether such principles precluded a presumption of irreparable harm).

We need not decide here whether eBay precludes a presumption of irreparable harm because Bart has demonstrated enough irreparable harm that the district court did not abuse its discretion in granting the preliminary injunction. In any event, Mercado has not challenged the district court's finding of irreparable harm, so this argument is waived.

-15-

carry the heavy burden of proving that the district court abused its discretion.").

Applying this deferential standard at this preliminary stage of the case, we cannot say the district court abused its discretion in granting Bart the preliminary injunction entered and denying Mercado's motion for a preliminary injunction against Bart's use of the trademark and publicity rights. We do not say that the issue of the scope of the trademark transferred has been resolved, only that there was no abuse of discretion as to preliminary injunctive relief.

Both parties claim ownership of the trademark while disputing the other's ownership of the same. Specifically, the parties disagree over whether Mercado licensed or fully assigned the trademark to Bart under the Agreement.[8]

We describe the different views. The district court adopted Bart's view that Mercado fully assigned the trademark to Bart because the Agreement plainly uses the term "assign." See P.R. Laws Ann. tit. 31, § 3471 ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."). Section 2(b) of the Agreement states that "Mercado hereby irrevocably assigns to Bart . . . all right, title and

---

[8] The parties agree that Mercado granted Bart a license to use his publicity rights in connection with the Preexisting and New Materials.

-16-

interest in and to the Mark, together with that part of the goodwill of Mercado's business connected with and symbolized by said Mark."  This unequivocal language is contrasted with Section 3(b), in which Mercado "grants to Bart the right and license . . . to use Mercado's . . . Name and Likeness."

This contrast in language, the district court noted, suggests that the parties intended to grant Bart a full assignment of the trademark.  See Russello v. United States, 464 U.S. 16, 23 (1983) (applying the presumption that the use of different words in different provisions is purposeful and evinces an intention to convey a different meaning); Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort & Spa, 388 F.3d 15, 18 (1st Cir. 2004) (explaining that language discrepancies between different contract provisions "may cast light on meaning").

Still, the district court acknowledged language suggesting otherwise: the text of Section 2(b) includes the subsidiary phrase "for use in connection with the Pre-existing Materials and the New Materials."  The district court reasoned, however, that this language is merely purposive and does not restrict the scope of the assignment.  See P.R. Laws Ann. tit. 31, § 3475 (providing that unclear language must be construed to effectuate the meaning of the contract read as a whole).  The magistrate judge had a different view.

-17-

The district court also noted that the Agreement stipulates that Bart has the right to register the trademark in its own name and the right to enforce the trademark in court. Such rights typically inure to assignees, not licensees. See, e.g., 15 U.S.C. §§ 1051(a)(1), 1127 (allowing an assignee to register a trademark under its own name with the U.S. Patent and Trademark Office); Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 159 n.6 (1st Cir. 1977) (stating that an "assignee would have the right to sue infringers in his own name," whereas a licensee has no exclusive right to sell a product associated with a trademark and cannot sue on his own behalf).

There was evidence that the parties took actions consistent with this reading. Not only did Bart file an application for the "Walter Mercado" trademark with the U.S. Patent and Trademark Office (PTO) in 1996, but Mercado filed at least three documents that ratified Bart's right to do so. In 1997, Mercado filed an affidavit with the PTO authorizing Bart to use and register the names "Walter Mercado," "Walter," and "Walter Mercado Salinas" as trademarks, and "grant[ing] to [Bart] all rights of ownership and authority to any and all of the [aforementioned] trademark names." Mercado filed a similar affidavit with the Mexican Patent Office in 1997 and a "Consent of Living Individual" with the PTO in 2005. The district court read these actions as evidence of Mercado's intention to assign the trademark perpetually

-18-

to Bart. See P.R. Laws Ann. tit. 31, § 3472 ("In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract.").

Mercado, however, urges adoption of the magistrate judge's reading that the Agreement grants Bart only a limited license to use the trademark. The magistrate judge concluded that because the Agreement consistently limits the use of the trademark to uses "in connection with" the Preexisting and New Materials, the grant is a limited license. See Agreement §§ 1(a), 1(b), 2(b), 3(b). Consistent with this interpretation, Section 6(c)(v) of the Agreement allows Mercado to retain several independent business ventures in "radio, newspaper, magazines and personal consultation related to psychic activities." See 3 Callmann on Unfair Competition, Trademarks and Monopolies § 20:63 (4th ed. 2011) ("The transfer of a trademark also will not be inferred from an assignment of a business where the assignor continues in the same line of business after the assignment.").

For our purposes, however, the issue is not whether Mercado licensed or fully assigned the trademark to Bart, but whether the district court abused its discretion in issuing

preliminary injunctive relief.  It did not because under either interpretation, Bart is entitled to an injunction.[9]  We explain.

The district court plainly did not abuse its discretion in applying collateral estoppel to the Florida district court's determination that Mercado's assignment under the Agreement is subject to reversion upon termination.  See Berríos-Romero v. Estado Libre Asociado de P.R., 641 F.3d 24, 26 (1st Cir. 2011) ("Issue preclusion, or collateral estoppel, forecloses relitigation in a subsequent action of a fact [or issue of law] essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." (quoting Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 69 (1st Cir. 2008)) (internal quotation marks omitted)).

Collateral estoppel applies when "(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 770 (1st Cir. 2010) (quoting Ramallo Bros. Printing, Inc. v. El Día, Inc., 490

---

[9]    Mercado's failure to validly terminate the Agreement also renders unsuccessful his claim that he is entitled to preliminary injunctive relief to prevent Bart from using his name and likeness. Like the rights to the trademark, Bart's rights to license Mercado's name and likeness were granted in perpetuity and Bart does not lose those rights without a valid termination of the Agreement.

F.3d 86, 90 (1st Cir. 2007)) (internal quotation marks omitted), cert. denied, 131 S. Ct. 1016 (2011). Mercado and Bart litigated the issue of reversion upon termination before the Florida district court, and the Florida court's determination was final at the summary judgment stage. The issue was essential to the court's determination that Mercado's trademark claims were moot because Mercado had not terminated the Agreement. In order to even assert a claim of injunctive relief, Mercado must demonstrate that he terminated the Agreement and that the trademark rights reverted to him.

The district court reasonably concluded that Mercado did not validly terminate the Agreement. Section 12(a)(iii) of the Agreement entitles Mercado to terminate the Agreement after fifteen days' written notice if Bart fails to pay Mercado any agreed compensation within sixty days of the due date. Mercado argues that he was entitled to terminate the Agreement in 2006 after Bart ceased to pay Mercado's monthly stipend. However, under Puerto Rico law, a party must comply with its own contractual obligations before it can demand compliance from the other party. See P.R. Laws Ann. tit. 31, § 3052. A party's breach effectively suspends the nonbreaching party's duty to tender performance. See id. § 3017.

Both the magistrate judge and the district court reasonably concluded that Bart's obligation to pay Mercado

compensation is reciprocal with Mercado's obligation to provide services. The compensation provisions are embedded within Section 6, which discusses Mercado's services, rather than earlier sections of the Agreement, which discuss the granting of rights. Structurally, Section 6 begins by cancelling Mercado's prior services obligations with Shoop & Associates. It then provides for the "Additional Services" that Mercado is to render and it concludes with a compensation structure. Read as a whole, Section 6 links Mercado's compensation and Mercado's services as reciprocal obligations.

Mercado has rendered no services to Bart since November 2006. Because Puerto Rico law demands that Mercado comply with his contractual obligation to provide services in order to demand compensation, the district court reasonably concluded that Bart is relieved from its obligation to pay Mercado compensation. This, in turn, means that Mercado had no right to terminate the Agreement and that the trademark rights have not reverted to him. The district court therefore did not abuse its discretion in denying Mercado's request for preliminary injunctive relief.

Nor did the district court abuse its discretion by granting Bart's request for preliminary injunctive relief.[10] All

---

[10] Section 13 of the Agreement does not bar Bart from seeking injunctive relief in this case. Section 13 states that "all grants granted or assigned by this agreement shall be irrevocable under all or any circumstances, and shall not be subject to rescission, termination or injunction. In the case of

four factors support the district court's decision, even if Bart only has a license.  See Borinquen Biscuit, 443 F.3d at 115.

First, as the district court explained, Bart has demonstrated a likelihood of success on the merits by showing (1) that the "mark merits protection" and (2) "that the allegedly infringing use is likely to result in consumer confusion." Id. at 116.  Consumer confusion is established by reference to eight guiding principles: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." Id. at 120.  This list is merely illustrative; the purpose of the inquiry is to determine whether "the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number

---

breach of this agreement by Bart, Mercado's sole remedy shall be limited to an action at law for damages."
 By its plain terms, this provision precludes Mercado from seeking to enjoin Bart from using the very trademark that Mercado granted to Bart.  Bart, on the other hand, granted no such trademark rights to Mercado.  Because the provision is limited to "grants granted" under the Agreement, it cannot operate to prevent Bart from seeking injunctive relief here.  The provision's express limitation of Mercado's remedies to damages, with no corollary provision for Bart, bolsters this reading.
 In any event, Mercado did not raise this argument before the district court and it is waived.  See Anderson v. Hannaford Bros. Co., 659 F.3d 151, 158 n.5 (1st Cir. 2011).

-23-

of reasonably prudent purchasers exercising ordinary care." The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 21-22 (1st Cir. 2010) (quoting Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996)) (internal quotation marks omitted).

The parties each agree that the mark merits protection. "[T]o be eligible for trademark protection, a mark must qualify as distinctive," Borinquen Biscuit, 443 F.3d at 116, either inherently or through acquired secondary meaning, id. at 116-17. The parties agree that the trademark "Walter Mercado" has a secondary meaning. The Agreement itself states that "the Mark has attained the status of a common law trademark and service mark." See Agreement § 2(a), at 3.

Additionally, there is a likelihood of consumer confusion. Bart has alleged that Mercado continues to use the trademark to develop new materials and products with third-party agents, including a book, a CD, a website, and horoscopes distributed in several countries in media including periodicals, television, text messages, and pre-recorded audio and video messages. The district court reasonably concluded that if Mercado and Bart are concurrently producing psychic and astrological products using the Mercado name, Mercado's infringing use of the trademark is likely to create consumer confusion. The products rely on the same trademark; they are within the same class of

astrological and psychic products; and they target the same class of Spanish-speaking astrological and psychic customers. See Borinquen Biscuit, 443 F.3d at 120.

Bart has also demonstrated irreparable harm. As the district court explained, Mercado's continued infringing use of the trademark has impaired Bart's marketing of its own astrological products and services. Mercado-Salinas, 747 F. Supp. 2d at 274-75. Bart also alleges that Mercado has interfered with Bart's use of the trademark by continuing to represent to third parties that he owns the trademark. Mercado has, for example, attempted to bill Bart's contractual partners directly for their use of the trademark.

Third, the court balances "the hardship that will befall the nonmovant if the injunction issues" against "the hardship that will befall the movant if the injunction does not issue." Borinquen Biscuit, 443 F.3d at 115. We cannot fault the determination that the balance of hardships tips in Bart's favor. We note the district court's preliminary injunction as issued still allows Mercado to engage in the same business enterprises allowed under the Agreement.

As to the impact of a preliminary injunction on the public interest, concurrent use of the trademark by Bart and Mercado may lead to substantial consumer confusion, which is not in the public interest. See id.

Mercado argues that the preliminary injunction is in error because it potentially prevents him from using his personal name. However, "[t]here is no doubt that a personal name used as a trademark may be expressly assigned to another along with the goodwill symbolized by the mark." 3 McCarthy on Trademarks and Unfair Competition § 18:32 (4th ed. 2011). "If a person has sold a business which is identified by his personal name, the name is an asset which he has sold, and he cannot keep commercial control of the name and keep the purchase price too. Of course, the seller can use his own name to identify himself, but he has sold the right to use the name as a commercial symbol -- a trademark." Id. (footnote omitted).

The injunction had two narrowing features: it only limited use of the trademark "Walter Mercado," and it contained an exception. We have upheld that injunction as not an abuse of discretion. While Mercado argued the original injunction was too broad, the court adopted the exception offered and Mercado offered no specifics beyond that. It can hardly be an abuse of discretion for the district court not to have sua sponte imposed further limitations.

## III.

We affirm the district court's denial of Mercado's request for preliminary injunctive relief and its grant of Bart's

request for preliminary injunctive relief.  We remand the case for trial and further development of the issues.