# United States Court of Appeals
## For the First Circuit

No. 10-2053

PEOPLES FEDERAL SAVINGS BANK,

Plaintiff, Appellant,

v.

PEOPLE'S UNITED BANK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Selya, and Lipez,
Circuit Judges.

Lee Carl Bromberg, with whom Erik Paul Belt, Lori J. Shyavitz, and McCarter & English LLP, was on brief for appellant.
David H. Herrington, with whom Lawrence B. Friedman, Arminda B. Bepko, Cleary Gottlieb Steen & Hamilton LLP, Nicholas B. Carter, and Todd & Weld LLP, was on brief for appellee.

February 10, 2012

**TORRUELLA**, **Circuit Judge**. Plaintiff-Appellant Peoples Federal Savings Bank ("Peoples Federal") challenges an interlocutory order denying its motion to preliminarily enjoin defendant-appellee People's United Bank ("People's United") from using the mark "PEOPLES" in the rebranding of several recently acquired banks in Eastern Massachusetts. After careful consideration, we conclude that Peoples Federal's motion for a preliminary injunction was properly denied. Peoples Fed. Sav. Bank v. People's United Bank, 750 F. Supp. 2d 217 (D. Mass. 2010). We therefore affirm the decision of the district court.

## I. Facts and Procedural History

### A. Factual Background

Peoples Federal is a community bank that operates exclusively in Eastern Massachusetts.[1] It was chartered in 1888 and became a federally insured savings and loan institution in 1937. While its headquarters are in Brighton, it has grown over the years and now operates branches in Allston, Brookline, Jamaica Plain, Norwood, and West Roxbury.

Peoples Federal has been using the term "Peoples" in its name and service marks since 1937 and claims to be the only

---

[1] As used in this opinion, the term "Eastern Massachusetts" will refer to the counties of Suffolk, Norfolk, Middlesex, Plymouth, Barnstable, Bristol, Dukes, Nantucket, Essex, and Worcester east of the City of Worcester. This definition was provided by Peoples Federal in its briefing to the Court and used by the district court in reaching its determination.

continuous user of the PEOPLES mark for banking services in Eastern Massachusetts since that time.[2]  It owns six Massachusetts registrations for its marks, including PEOPLES, PEOPLES FEDERAL, and PEOPLES FEDERAL SAVINGS BANK, which were granted on June 15, 2010, the same day Peoples Federal filed suit in this case.  It promotes its marks through advertising and marketing efforts, involvement in community activities, and charitable giving.  The bank has attracted media attention and been portrayed favorably in the press.

Defendant-Appellee People's United was founded in 1842 in Bridgeport, Connecticut, and has used the word "People" in its name for at least eighty years.  The bank was called "People's Bank" until 2007, when it changed its name to "People's United Bank" in consideration of its plans to expand beyond Connecticut and distinguish itself from other banks that also use the word "People" in their titles.  People's United is a full-service, regional bank with over $22 billion in assets.

On April 16, 2010, as the result of a competitive bidding process, People's United acquired from the Federal Deposit Insurance Corporation ("FDIC") the deposits and banking operations of the failed Butler Bank, which had branches in north central

---

[2]  People's United refutes this contention, asserting that at least four different banks that have names containing the word "People" have operated branches in the eastern part of the state during the same time period.

Massachusetts, and Butler Bank's subsidiary, Marlborough Cooperative, which had branches in Marlborough (collectively, "Butler"). On the following day (April 17, 2010), People's United began rebranding all former Butler branches and re-opened them under its own name. Specifically, it covered or otherwise replaced exterior signs at the former Butler branches with signs bearing the name and logo of "People's United Bank." People's United also used its name and logo to replace the failed bank's interior posters and brochures, and to publish new marketing materials and newspaper advertisements for these branches. Butler's troubles were covered extensively in the press as the first Massachusetts bank to fail in sixteen years. The press also covered the related purchase and rebranding of all Butler branches by People's United.

## B. Procedural History

On June 15, 2010, Peoples Federal filed suit against People's United alleging trademark infringement, trademark dilution, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as Massachusetts statutory and common law. One month later, on July 15, 2010, after unsuccessful negotiations with People's United, Peoples Federal presented its motion for preliminary injunction and temporary restraining order. Peoples Federal averred that People's United proposed to launch the rebranding of its former Butler branches on July 19, 2010 and that this would cause confusion among Peoples

-4-

Federal's current and potential customers, damaging its goodwill and threatening irreparable harm to its name recognition in Eastern Massachusetts. It therefore sought to enjoin People's United from rebranding its newly acquired Butler branches -- and any other branches that it might procure in Eastern Massachusetts -- with the People's United name, logo or other PEOPLES-formative marks, pending adjudication of the parties' rights in the instant suit.

At an emergency hearing convened on July 16, 2010, People's United informed the district court that the rebranding of the former Butler branches had already occurred and had been in place for the past three months. Regardless, it agreed to refrain from taking further action, i.e., make any additional changes to branch facades or marketing or advertising materials, in the immediate future. People's United explained that the July 19 date must have been based on a misunderstanding because People's United had no plans to execute any further rebranding on that date.[3] Once satisfied that the status quo would be maintained, the district court scheduled a status conference and motion hearing for July 29, 2010. At the motion hearing, the court announced its preliminary

---

[3] Peoples Federal alleges it first learned that People's United was moving into its trade area in April of 2010, when People's United acquired Butler. However, it claims that it was not until June of that year when it learned, through announcements in the media, that instead of operating these banks under their previous names, People's United was planning to convert all of its New England branches to the "People's United" brand. It made this averment, despite the fact that actual rebranding of the Butler branches had occurred in mid-April, immediately after acquisition.

findings and invited argument from the parties. On August 9, 2010, after considering the parties' written submissions and oral arguments, the district court issued a memorandum and order denying Peoples Federal's motion.

### 1. Denial of Preliminary Injunctive Relief

In assessing Peoples Federal's motion, the district court weighed the four preliminary injunction factors: (1) the plaintiff's likelihood of success on the merits, (2) the likelihood of irreparable harm, (3) the balance of relevant equities, and (4) the effect of the court's action on the public interest. See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). Ultimately, it found against Peoples Federal on each of these factors.

As to likelihood of success on the merits, the district court first rejected Peoples Federal's argument that its PEOPLES mark was entitled to a presumption of protectability, i.e., inherent distinctiveness,[4] based on its six Massachusetts trademark registrations. Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 222. It so held in part because Peoples Federal's registration of the mark was filed on the same day that suit was brought in this case, and

_____

[4]  In order for a mark to be eligible for trademark protection, it must qualify as distinctive, Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006), meaning that "[the mark] is capable of functioning as a source-identifier of goods." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).

only after People's United had begun its rebranding process in Massachusetts. The court also considered as relevant the fact that another Massachusetts bank by the name of "PeoplesBank" had operated as a local bank in Massachusetts since 1885, and had registered a mark that included the dominant word "Peoples" prior to Peoples Federal.[5] The district court determined that this registration "substantially outdates Peoples Federal's recent, litigation-driven registrations." Id.

The court nevertheless considered whether, independent of its Massachusetts registrations, the PEOPLES mark was inherently distinctive. It concluded that the PEOPLES mark is properly classified as "descriptive" rather than "suggestive" because it did not require a stretch of the imagination to associate the term "People" with banking services.[6] Id. at 223. In reaching this

---

[5] On this point, the district court referenced an ongoing trademark dispute between PeoplesBank and the same defendant-appellee in this case, People's United. People's United Bank v. PeoplesBank, No. 08-cv-01858 (Dist. Conn. filed Dec. 8, 2008). PeoplesBank seeks to enjoin People's United from using its name in certain parts of Western Massachusetts. The district court denied preliminary injunctive relief in that case after a six-day evidentiary hearing, finding that PeoplesBank had failed to demonstrate a likelihood of consumer confusion. See 2010 WL 2521069 (D. Conn. June 17, 2010), aff'd, 401 Fed. App'x 607 (2nd Cir. 2010).

[6] In assessing a mark's distinctiveness, proposed marks are categorized along a spectrum as "(1) generic (least distinctive), (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful (most distinctive)." Boston Duck Tours, LP, 531 F.3d at 12. Marks classified as suggestive, arbitrary or fanciful are considered inherently distinctive, whereas descriptive marks are tentatively considered non-distinctive and can only attain distinctive status

conclusion, which the district court characterized as "a close call," it distinguished another district court opinion, <u>Commerce Bank & Trust Co.</u> v. <u>TD Banknorth, Inc.</u>, 554 F. Supp. 2d 77 (D. Mass. 2008), in which the word "Commerce" was found to be suggestive in the banking context. The <u>Commerce Bank & Trust Co.</u> court had found that, unlike "Commerce," words such as "Community," "National," and "Mutual" are "descriptive of a specific characteristic" of a banking institution. <u>Id.</u> at 84. Similarly, the district court in this case concluded that "the term 'Peoples' is a straightforward way to describe a bank as 'people-oriented.'" <u>Peoples Fed. Sav. Bank</u>, 750 F. Supp. 2d at 223. The district court also concluded that the frequent use of the term "People" in connection with banking services cuts in favor of defining the mark as descriptive. <u>See</u> <u>id.</u> (noting that "people" ranks as the twelfth most commonly used word in bank names on the FDIC's website, appearing in the names of 159 banks in the United States).

Having found the mark to be descriptive, the district court then determined whether the same had acquired secondary meaning sufficient to entitle it to protection. The court looked at the bank's advertising budget, the nature and extent of its promotion efforts, and evidence of the bank's growth, per this

"upon an affirmative showing of secondary meaning." <u>Borinquen Biscuit Corp.</u>, 443 F.3d at 116; <u>Equine Techs., Inc.</u> v. <u>Equitech., Inc.</u>, 68 F.3d 542, 544 (1st Cir. 1995) (merely descriptive terms generally are not entitled to protection because "they are a poor means of distinguishing one source of services from another").

-8-

Court's guidance in <u>Boston Beer Company Limited Partnership</u> v. <u>Slesar Brothers Brewing Company</u>, 9 F.3d 175 (1st Cir. 1993), in which we listed factors to be taken into account when assessing a showing of secondary meaning.  <u>See</u> <u>Peoples Fed. Sav. Bank</u>, 750 F. Supp. 2d at 223-24 (citing <u>Boston Beer Co.</u>, 9 F.3d at 181-82).  The district court found that, although Peoples Federal had demonstrated that its mark had acquired secondary meaning within the neighborhoods where it has branches, it had not done so beyond those areas.  Specifically, although it had developed plans to open branches in Suffolk, Middlesex, and Norfolk counties, Peoples Federal had not shown that a substantial portion of the consuming public in those areas recognized the PEOPLES mark.  Its advertising efforts and community involvement, though significant, were found to be highly localized within the Boston city limits and nearby urban areas.  Therefore, the district court concluded that Peoples Federal's mark was enforceable, but only "within Allston/Brighton, Brookline, Jamaica Plain, Norwood and West Roxbury . . . [and] not throughout all of Eastern Massachusetts, or even the rest of Middlesex, Suffolk and Norfolk counties."  <u>Id.</u> at 224.

     The district court then evaluated whether People's United's alleged infringing use was likely to result in consumer confusion.  In finding against Peoples Federal on this point, the court carefully weighed the eight likelihood-of-confusion factors established in <u>Pignons S.A. de Mecanique de Precision</u> v. <u>Polaroid</u>

Corp. (Pignons), 657 F.2d 482, 487 (1st Cir. 1981) (the "Pignons factors" or "Pignons analysis").[7] The court determined that, although the banks' marks contain the same dominant word, important differences between the marks, including additional essential words (such as "Federal" and "United") and visual differences in their logos "undoubtedly help customers distinguish between the two banks, thus decreasing the chance of confusion." Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 225.

Although the district court considered the similarity of the services and found that this factor weighed in favor of Peoples Federal, it also weighed the parties' differing views on whether the two banks market to the same kinds of retail and commercial consumers. It noted that while Peoples Federal emphasizes its identity as a small neighborhood bank, People's United is a large, regional bank with numerous branches throughout New England. As to the similarity of their advertising, channels of trade and prospective customers, the court also determined that because banking customers "ordinarily gather information before choosing a bank and make their decision based on substantive factors (other

---

[7] In Pignons, we stated that when determining whether a putative infringer's use of a mark is likely to cause consumer confusion, a court should examine the following factors: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of the plaintiff's mark." 657 F.2d at 487.

than a bank's name)," the likelihood of confusion on those grounds was minimal, "particularly because the banks [in this case] do not operate branches in the same neighborhoods." Id. at 226. Therefore, the balance of these three factors tipped slightly in favor of People's United.

The district court then considered two instances of alleged confusion cited by Peoples Federal in support of its motion, both of which stemmed from a Boston Globe article that discussed a merger between People's United and River Bank, an entity that operates branches in Essex County. Evidence was presented that Thomas Leecht ("Leecht"), President and CEO of Peoples Federal, was asked on two separate occasions whether Peoples Federal (as opposed to People's United) was acquiring River Bank.[8] The district court stated that neither of the reported incidents involved confusion among current or prospective customers, which indicated "a paucity of evidence of actual consumer confusion." Id.[9] Nonetheless, it found that because

---

[8] Leecht stated in an affidavit that several days after the Boston Globe article appeared, a fellow rotary club member asked him whether Peoples Federal was purchasing River Bank. Leecht also reported that, during a sales pitch, a billboard vendor indicated that he had thought Peoples Federal was acquiring River Bank, but that he may have been confusing Peoples Federal with another bank. Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 226.

[9] In doing so, the district court distinguished the present case from the facts in Commerce Bank & Trust Co., 554 F. Supp. 2d at 86, where after a merger announcement in the Boston Globe involving the defendant in that case, the plaintiff received numerous calls and emails from current customers asking if they could begin depositing

People's United entered Eastern Massachusetts only a few months prior, the lack of proof of actual confusion was less salient, and concluded that the scarcity of such evidence was not in itself dispositive of Peoples Federal's claim.

It next determined that Peoples Federal presented no compelling evidence that People's United acted in bad faith by adopting the mark "People's United Bank", and that -- to the contrary -- it had used the word "People's" in its name for decades, asserting that "its decision to change its name from 'Peoples Bank' [sic] to 'Peoples United Bank' [sic] aimed to avoid, rather than create, confusion in the market place."[10]  Id.  It further found credible People's United's contention that the rebranding of the acquired Butler branches was consistent with standard practice in FDIC-assisted acquisitions.  The court perceived "no intent by Peoples [sic] United to get a free ride off the good will of plaintiff's mark or to confuse prospective customers," thus the intent factor weighed in People's United's favor.  Id. at 227.

Finally, the district court considered the strength of the marks.  Per its discussion regarding the lack of inherent

their paychecks at the new branches.

[10]  Throughout its opinion, the district court referred to People's United as "Peoples United."  Here we have used the phrasing of the bank's name in the possessive form, as reflected in the parties' briefs and the record on appeal.

-12-

distinctiveness of Peoples Federal's mark, the court noted that "the conceptual strength of the PEOPLES mark is belied by the fact that 159 banks elsewhere around the country use that mark and many coexist in the same market areas." Id. Although the PEOPLES mark had developed secondary meaning in the specific neighborhoods in which Peoples Federal operates, the court found the term to be a common one in the banking industry as a whole. Thus, the mark's lack of inherent conceptual strength tilted this factor in favor of People's United. The district court concluded that the balance of the Pignons factors -- particularly the dissimilarity between the parties' logos, consumers' tendency to perform research before selecting a bank, the absence of bad faith, and the scarcity of evidence of actual confusion -- weighed against a finding of likelihood of consumer confusion. The court additionally noted that

> at least at this stage of the proceedings, [Peoples Federal] has not adequately demonstrated that it is likely to succeed on the merits of its trademark claim. If, however, evidence is elicited that 1) [People's United] is deliberately encroaching into the specific neighborhoods in which [Peoples Federal] operates and/or promotes itself as "Peoples" (rather than "People's United") in an effort to divert [Peoples Federal's] customer base and 2) [People's United's] actions have caused actual confusion among [Peoples Federal's] clientele, the [c]ourt would entertain a renewed motion for injunctive relief.

Id.

-13-

The district court concluded its analysis by considering the other three preliminary injunction factors.  It found that, because Peoples Federal had failed to make a showing of likelihood of consumer confusion, it was not at risk of continuing irreparable harm.  Its finding that whatever harm incurred thus far was neither imminent nor irreparable was buttressed by the fact that People's United had been using its name to operate former Butler branches for more than three months with scant evidence of consumer confusion or Peoples Federal's awareness until June of 2010.  The court concluded that, because Peoples Federal had failed to show both likelihood of confusion and irreparable harm, the balance of the equities and the analysis of the public interest weighed against providing injunctive relief.

This interlocutory appeal ensued.

## II.  Discussion

Peoples Federal challenges the district court's denial of a preliminary injunction on multiple grounds.  The main thrust of its appeal is that the court imposed an impermissibly high standard for establishing a likelihood of success on the merits by improperly weighing the eight Pignons factors for likelihood of consumer confusion.  As will be discussed below, we hold that the district court acted within its discretion when it denied injunctive relief based on its appraisal of the evidence and an accurate application of our case law.

-14-

## A. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." Voice of the Arab World, Inc., 645 F.3d at 32 (citations and internal quotation marks omitted). In order for a court to grant this type of relief, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." Id. (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Generally, "[w]hile all these factors must be weighed, the cynosure of this four-part test is . . . the movant's likelihood of success on the merits." Borinquen Biscuit Corp., 443 F.3d at 115. In a trademark case, "[t]he importance of that inquiry is magnified . . . because the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement." Id. ("This emphasis on likelihood of success is fully consistent with the tenet that, as a matter of public policy, trademarks should be protected against infringing uses.").[11]

---

[11]  We recently noted that this Court has in the past employed a presumption that irreparable harm can be assumed "if a trademark holder demonstrates a likelihood of success in establishing infringement." Mercado-Salinas v. Bart Enters. Int'l, Ltd., No. 10-2359, 2011 WL 6350535, at *6 n.7 (1st Cir. Dec. 20, 2011). We reiterate here that there is a looming question as to whether this presumption can co-exist with the Supreme Court's recent holding in

-15-

The district court's conclusions regarding these factors and its determinations as to their relative weight deserve considerable deference on appeal.  Id. at 116.  Accordingly, the grant or denial of a preliminary injunction is reviewed for abuse of discretion.  United States v. Weikert, 504 F.3d 1, 6 (1st Cir. 2007).  "Within that framework, findings of fact are reviewed for clear error and issues of law are reviewed de novo."  Boston Duck Tours, LP, 531 F.3d at 11.  In other words, the Court "will set aside a district court's ruling on a preliminary injunction motion only if the [district] court clearly erred in assessing the facts, misapprehended the applicable legal principles, or otherwise is shown to have abused its discretion."  Id. (quoting Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005)).

---

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-93, 394 (2006) (holding in a patent case that district courts may not "replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed," and requiring courts to exercise their discretion "consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards").  See also Voice of the Arab World, Inc., 645 F.3d at 31 (concluding that the principles of eBay applied to a request to preliminarily enjoin alleged trademark infringement, but declining to decide whether such principles precluded the court of appeals from presuming irreparable harm).  Since Peoples Federal was unable to establish a likelihood of consumer confusion, i.e., a likelihood of success on the merits of its trademark infringement claim, the district court in this case did not reach the question whether it could presume irreparable harm, and we need not do so here.

We turn now to Peoples Federal's challenges on appeal, all of which center on the first factor in the preliminary injunction analysis: likelihood of success on the merits.

## B. Likelihood of Success on the Merits

In order for a party to succeed on a claim of trademark infringement, it must demonstrate that (1) its mark merits protection and (2) the allegedly infringing use is likely to result in consumer confusion. Borinquen Biscuit Corp., 443 F.3d at 116. "We have interpreted 'likely confusion' to mean 'more than the theoretical possibility of confusion.'" Boston Duck Tours, LP, 531 F.3d at 12 (quoting Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)). This means "the allegedly infringing conduct must create 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" Id. (quoting Int'l Ass'n of Machinists, 103 F.3d at 201).

As conveyed by the district court, we have enumerated eight factors to guide the inquiry into likelihood of confusion:

> [1] the similarity of the marks; [2] the similarity of the goods; [3] the relationship between the parties' channels of trade; [4] the relationship between the parties' advertising; [5] the classes of prospective purchasers; [6] evidence of actual confusion; [7] the defendant's intent in adopting its mark; [8] and the strength of the plaintiff's mark.

Pignons, 657 F.2d at 487; accord Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983). "A proper analysis takes cognizance of all eight factors but assigns no single factor dispositive weight." Borinquen Biscuit Corp., 443 F.3d at 120. See also Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004) ("Courts may consider other factors and may accord little weight to factors that are not helpful on the particular facts of a case."). Further, "[b]ecause likelihood of confusion is a factbound inquiry, appellate review of a trial-level finding on that issue is for clear error." Borinquen Biscuit Corp., 443 F.3d at 120.

The court below applied this eight-factor test and concluded that, on the whole, the evidence weighed against a finding that People's United's use of the PEOPLES mark was likely to cause consumer confusion. Peoples Federal attacks the district court's determination on various grounds, all of which we find unpersuasive. We consider each in the order presented to us on appeal.

### 1. Actual Confusion and the Defendant's Intent

We first evaluate Peoples Federal's related arguments as to the sixth and seventh factors in the Pignons analysis: evidence of actual confusion and the defendant's intent in adopting the PEOPLES mark.

### a. Actual Confusion

Peoples Federal argues that the district court erred by requiring proof of actual confusion. It posits that, "[w]hile evidence of actual confusion is 'often deemed the best evidence of possible future confusion,' proof of actual confusion is not essential to finding likelihood of confusion." Id. (quoting Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 40 (1st Cir. 2006)). It also emphasizes that because People's United and Peoples Federal had only co-existed in Eastern Massachusetts for a short period of time, evidence of actual confusion could not be expected. See id. at 121 ("Historically, we have attached substantial weight to a trademark holder's failure to prove actual confusion only in instances in which the relevant products have coexisted on the market for a long period of time."). Peoples Federal notes that the relevant injury in the likelihood of confusion analysis includes loss of goodwill and control of the mark, and is not limited to whether confusion caused an actual diversion of customers or lost sales. See Beacon Mut. Ins. Co., 376 F.3d at 10, 15 (the relevant commercial injury for purposes of § 43(a) of the Lanham Act includes not only loss of sales to actual and prospective buyers, but also harm to the trademark owner's goodwill and reputation).

Peoples Federal's argument is a red herring. It is patently clear from a balanced reading of the district court's

opinion that it only considered confusion regarding current or prospective buyers as one in a series of factors. Indeed, after noting that evidence of actual confusion was limited in this case, the court went on to state that "the scarcity of such evidence [was] not in itself dispositive of plaintiff's claim," Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 226 (citing to relevant case law), and acknowledged that People's United had entered Eastern Massachusetts only a few months prior. The district court then continued to weigh the remaining Pignons factors before reaching its determination.

While it is true that evidence of actual confusion is not a prerequisite for a finding of likelihood of confusion, courts may still weigh evidence presented on this factor as part of their balanced analysis. See, e.g., Beacon Mut. Ins. Co., 376 F.3d at 16 (noting that, although "other persons might be relevant if their confusion threatens the commercial interests" of the mark's owner, "[a]ctual and potential customers . . . are the most obvious 'relevant persons'" in a likelihood of confusion analysis) (citation and quotation marks omitted). There is no error of law here, and the court's assessment of the evidence was not clearly erroneous.[12]

---

[12] Notably, the only other evidence presented by Peoples Federal in support of a finding that actual confusion weighed in its favor was an online poll conducted by "Banker & Tradesman" related to the litigation between PeoplesBank and People's United. The poll was conducted over the course of a week and purportedly resulted in

### b.  People's United's Intent in Adopting the Mark

Peoples Federal argues that the district court erred by requiring evidence of deliberate encroachment (or bad intent) to divert Peoples Federal's customers.  It points out that "[e]vidence of bad intent, . . . while potentially probative of likelihood of confusion, is simply not required in a trademark infringement case; moreover, 'a finding of good faith is no answer if likelihood of confusion is otherwise established.'"  Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996) (quoting President & Trs. of Colby Coll. v. Colby Coll.-N.H., 508 F.2d 804, 811-12 (1st Cir. 1975)).  However, in this case -- as noted throughout this opinion -- likelihood of confusion was not "otherwise established."  In addition, although bad intent is "not

---

almost eighty percent of respondents choosing "Yes, the two banks names are too similar", to the question "Will PeoplesBank be successful in its legal fight with People's United?"  Peoples Federal contends that this shows the public would be confused by the presence of another "Peoples" bank in Massachusetts.

Putting aside the fact that the referenced poll used loaded questions to require predictions as to a litigation that is not related to the present case, thus undercutting its accuracy and relevance, we do not think the district court committed error, let alone clear error, by not referencing this poll in its opinion because its findings were adequately supported by other evidence. This "proof" of potential confusion is not strong enough that we would set aside the lower court's finding as clear error for failure to consider the same.  Cf. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 31 (1st Cir. 1989) (where plaintiffs' other evidence of confusion was sufficiently strong, lack of survey data as to public knowledge regarding the source of the goods in question did not fatally undercut plaintiffs' claims, as "[they] were not bound to a particular form of evidence" to prove confusion).

required" for a finding of trademark infringement, the defendant's intent in adopting the mark is an appropriate consideration in the court's assessment of whether the public is likely to be confused about the actual source of the goods or services at issue. See, e.g., Boston Duck Tours, LP, 531 F.3d at 30 (absence of bad faith weighed against a finding of infringement); Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 819 (1st Cir. 1987) (noting as relevant to infringement analysis that, while evidence did not indicate an intent to deceive customers, it did indicate that defendant chose "Beetle" mark "not independently, but with an intent to benefit from [the plaintiff's] reputation"). Here, the defendant created its mark and logo years before it entered the Eastern Massachusetts market.

### c. Application of a "Heightened" Standard for Likelihood of Confusion

Peoples Federal contends that the district court erred by requiring proof of actual confusion, actual loss of business, and bad intent, thereby applying an improperly high standard for likelihood of success on the merits. Peoples Federal points to the district court's statement at the end of its likelihood of success analysis to support its position. The district court indicated that "at least at this stage of the proceedings, the plaintiff ha[d] not adequately demonstrated it [would be] likely to succeed on the merits of its trademark claim." Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 227. In particular, the district court stated it

-22-

"would entertain a renewed motion for injunctive relief" if evidence was elicited of (1) deliberate encroachment into specific neighborhoods where Peoples Federal operates and of (2) People's United's actions having caused actual confusion among Peoples Federal's clientele. Id. Peoples Federal argues this language confirms that the district court required more than a mere likelihood of confusion, and that it found against the grant of a preliminary injunction because Peoples Federal failed to present proof of these two factors. We are not persuaded.

Peoples Federal reads more into the district court's words than is warranted. The district court's findings as to likelihood of confusion were supported by the record before it, which included scant evidence of actual confusion, a proper consideration of People's United's intent in adopting the mark, and a thorough analysis of six other factors. These additional expressions were only an attempt to clarify to the parties the court's willingness to consider future motions for injunctive relief if it were given a more developed record.

We also reject Peoples Federal's related contention that the district court applied an improperly high standard as to likelihood of confusion because it indicated that in a trademark infringement case the plaintiff carries "a considerable burden" to show "not just a 'possibility of confusion' but rather a 'substantial likelihood of confusion.'" Id. at 224 (emphasis

added) (quoting Bear Republic Brewing Co. v. Cent. City Brewing Co., 716 F. Supp. 2d 134, 140 (D. Mass. 2010)). The district court's consideration of the actual confusion factor did not amount to a requirement "to prove an iron-clad, sure-bet likelihood of confusion," as characterized by Peoples Federal. The district court accurately framed the plaintiff's burden, see, e.g., Star Fin. Servs., Inc., 89 F.3d at 10 ("We require evidence of a substantial likelihood of confusion -- not a mere possibility . . .") (internal quotation marks omitted), and -- after an appraisal of Peoples Federal's slim proffer of evidence -- determined, in its discretion, that the proffered evidence was insufficient to support a finding of likelihood of confusion.

## 2. Similarity of the Marks

Peoples Federal argues that the district court erred by engaging in a side-by-side comparison of the banks' respective logos, and that it gave too little weight to the use by both banks of the same dominant word in its similarity-of-the-marks analysis. However, as Peoples Federal recognizes, "[s]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." Volkswagenwerk, 814 F.2d at 817 (quoting Pignons, 657 F.2d at 467). Accordingly, the district court took a holistic approach in assessing the parties' marks, considering their "sight, sound and meaning," and finding important differences. Peoples Fed. Sav. Bank, 750 F. Supp. 2d at

-24-

225 (quoting Boustany v. Boston Dental Grp., Inc., 42 F. Supp. 2d 100, 107 (D. Mass. 1999)). Specifically, the district court noted that People's United's mark contains the equally prominent word "United" and that its logo uses a red and blue color scheme, as well as a red orbit icon that encircles both the words "People's" and "United." Id. Meanwhile, Peoples Federal uses a green color scheme, with a yellow horizontal line separating the word "Peoples" from "Federal Savings Bank." Id. The district court concluded that "[a]lthough the banks' marks contain the same dominant word, the visual differences in their logos neutralize[d] this factor." Id.

Contrary to Peoples Federal's contentions, the court's conclusion is supported by our case law. See Int'l Ass'n of Machinists, 103 F.3d at 204 ("otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations"); Pignons, 657 F.2d at 487 (same); cf. Beacon Mut. Ins. Co., 376 F.3d at 9-10, 18 (factfinder could reasonably find total effect of marks to be similar where, in addition to sharing "the[ir] most salient word", marks also shared "the[ir] only pictorial element," an image of a lighthouse).[13] In addition, as will be discussed in our

_____

[13] On this ground we must reject the related contention by Peoples Federal that the district court abused its discretion or otherwise committed clear error because it did not give greater weight to its own finding that the banks' marks were "often abbreviated" to simply "Peoples". Evidence of name abbreviation by both banks was

-25-

assessment of the appellant's strength-of-the-marks arguments infra, the district court did not commit error in determining that the word "Peoples" was descriptive, rather than suggestive, and that determination cuts in favor of its finding against Peoples Federal on the similarity factor. See, e.g., Boston Duck Tours, LP, 531 F.3d at 29 (finding "Boston Duck Tours" and "Super Duck Tours" dissimilar despite both parties' use of same dominant word; emphasizing that "[e]ven if elements of each party's mark overlap, or are visually similar, the marks as a whole may still create a distinct commercial impression, especially if the similarities are limited to generic or descriptive elements"); see also First Sav. Bank, F.S.B. v. First Bank Sys., Inc., 101 F.3d 645, 655 (10th Cir. 1996) ("When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks.").

---

scant. The record reflects that most instances of curtailment occurred within contextual marketing materials where phrases such as "It's Possible at People's" were used in conjunction with the respective bank's full name and logo.

We also reject the argument that a special rule should apply in cases involving banks where a dominant word is alleged to cause confusion. Peoples Federal provides no legal support for this proposition; it merely cites district court decisions involving banks where the facts supported a finding of likelihood of confusion. People's United found just as many cases involving banks that reached the opposite outcome. The question is one of fact, Borinquen Biscuit Corp., 443 F.3d at 120, and no clear error is displayed here.

### 3. Similarity of the Services

Peoples Federal contends that because the district court found that "[t]he parties offer essentially identical retail and commercial banking services," and this factor weighed in favor of People's United, Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 225, the court's overall conclusion should have also cut in its favor. Once again, Peoples Federal misconstrues the applicable legal standard. A proper analysis of the eight elements that guide the likelihood of confusion inquiry "assigns no single factor dispositive weight." Borinquen Biscuit Corp., 443 F.3d at 120. The court committed no abuse of discretion by considering the evidence on each of the remaining factors as part of its overall determination.

### 4. Relationship Between the Parties' Advertising and Channels of Trade, and the Classes of Prospective Customers

After considering these three interrelated factors together, see Beacon Mut. Ins. Co., 376 F.3d at 19, the district court noted differences between the scope of the parties' businesses and found that customers were unlikely to be confused because of the level of care they ordinarily would employ before choosing a bank. It ultimately decided that "even if the two banks attract the same clientele, the likelihood of confusion is minimal, particularly because the banks do not operate branches in the same neighborhoods." Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 226.

-27-

Peoples Federal attacks this finding on the ground that the difference between the banks in this case -- i.e., the fact that Peoples Federal is a small, neighborhood bank, whereas People's United is a large, regional bank -- augments the likelihood of reverse confusion. See, e.g., Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 72 (1st Cir. 2008) (explaining that "under a reverse confusion theory, customers purchase the senior user's goods under the misimpression that the junior user is the source of the senior user's goods" and that harm may occur if "the junior user saturates the market and overwhelms the senior user," affecting the value of the trademark and the senior user's business); see also Attrezzi, LLC, 436 F.3d at 40 ("[T]he relatively greater strength of a junior user . . . may hurt, rather than help, its defense.") (internal quotation marks omitted). Notwithstanding, we have held that "[t]here is no actionable reverse confusion in the absence of a showing of likely confusion as to source or sponsorship," Visible Sys. Corp., 551 F.3d at 72, and all of the other factors considered by the district court in this case weighed against such a finding.

In addition, contrary to the appellant's contention, the district court's conclusion that customers would not likely be confused between the banks because banking customers "ordinarily gather information before choosing a bank and make their decision based on substantive factors (other than a bank's name)," Peoples

-28-

<u>Fed. Sav. Bank</u>, 750 F. Supp. 2d at 226, is supported by expert testimony on the record, and Peoples Federal fails to articulate how this conclusion constitutes either a legal or a factual error. Our Circuit's precedent indicates that "any meaningful inquiry into the likelihood of confusion necessarily must replicate the circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark." <u>Int'l Ass'n of Machinists</u>, 103 F.3d at 201. The parties have not pointed to, nor have we found, case law in our Circuit interpreting the level of care to which we may hold an ordinary consumer in the banking sector. However, other circuits examining the subject have reached conclusions similar to that reached by the district court in this case. <u>See</u>, <u>e.g.</u>, <u>First Nat. Bank in Sioux Falls</u> v. <u>First Nat. Bank, S.D.</u>, 153 F.3d 885, 889-90 (8th Cir. 1998) (validating lower court's holding that "consumers tend to exercise a relatively high degree of care in selecting banking services" and recognizing that "other courts have determined there to be minimal or no likelihood of confusion even where the names of financial institutions share the same dominant terms"); <u>First Sav. Bank, F.S.B.</u>, 101 F.3d at 653 (no likelihood of confusion between "FirstBank" and "First Bank System" service marks where bank logos were visually distinct); <u>Sun Banks of Fla., Inc.</u> v. <u>Sun Fed. Sav. & Loan</u>, 651 F.2d 311, 319 (5th Cir. 1981) (no likelihood of confusion between "Sun Federal Savings" and "SunBanks" service marks); <u>First Bank</u> v. <u>First Bank</u>

Sys., Inc., 909 F. Supp. 657, 661 (S.D. Iowa 1995) (confusion between names "First Bank" and "First Bank Iowa" is reasonably manageable such that equities weigh against permanent injunction), aff'd, 84 F.3d 1040 (8th Cir. 1996).  We do not in this case adopt a categorical rule for banking cases, but merely hold that the record supports the district court's conclusion as to the level of care that could be presumed, and this was not in itself an abuse of discretion.  See Boston Athletic Ass'n, 867 F.2d at 30 (noting that "[d]istinctions based on expertise can be useful in analyzing likelihood of confusion"); Astra Pharm. Prods., Inc., 718 F.2d at 1206 ("[T]here is always less likelihood of confusion where goods are expensive and purchased after careful consideration.").

### 5.  **Strength of the Marks**

Peoples Federal argues that the district court erred by not enjoining People's United's use of the PEOPLES mark within the trade area when it concluded that the mark had acquired secondary meaning.  Alternatively, Peoples Federal contends the court erred by classifying the PEOPLES mark as descriptive rather than suggestive, and by not ascribing inherent distinctiveness to the mark by virtue of Peoples Federal's trademark registrations.

First, the fact that the district court found the mark to be protectable in a particular trade area (i.e., within Allston/Brighton, Brookline, Jamaica Plain, Norwood and West Roxbury) does not itself entitle Peoples Federal to a preliminary

injunction, particularly when it has not been able to prove a likelihood of confusion, Borinquen Biscuit Corp., 443 F.3d at 116, and established the other three factors in the preliminary injunction analysis, Voice of the Arab World, Inc., 645 F.3d at 32.

Second, the district court's determination as to whether a term is generic, descriptive, or inherently distinctive is a question of fact. Boston Beer Co., 9 F.3d at 180. So is the question whether a mark has acquired secondary meaning. Id. "Accordingly, the district court's findings on both of these questions are subject to review only for clear error," a hurdle that is "quite high." Id. (quoting Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993)) (internal quotation marks omitted). Peoples Federal simply fails to overcome this obstacle on appeal; it offers nothing more than a difference of opinion as to the district court's conclusions on the record, which we believe were reasonably reached.

Peoples Federal suggests that, in reaching its conclusion that the mark lacked inherent conceptual strength, the district court improperly relied on uses of the PEOPLES-formative mark which were outside of the relevant trade area. We hold that the district court did not commit legal error on this ground. As a threshold matter, the court found that "159 banks elsewhere around the country use [the PEOPLES mark] and many coexist in the same market areas." Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 227 (emphasis

-31-

added).  Specifically, the district court found that "four other banks in Eastern Massachusetts have used marks which include the word 'People'."  Id. at 222.  "Although those banks were not located in the same neighborhoods as the Peoples Federal branches (which are primarily in Suffolk County)," the court found "their use of the mark casts doubt on its inherent distinctiveness."  Id. It is therefore misleading for Peoples Federal to contend that the district court went beyond the relevant market area in reaching its conclusions.

Furthermore, in assessing the strength of the plaintiff's mark, the district court may analyze both its conceptual and commercial strength.  Boston Duck Tours, LP, 531 F.3d at 16-17. Accordingly, the district court here concluded that the mark was descriptive, in part because it was frequently used in the banking industry as a whole.  See Peoples Fed. Sav. Bank, 750 F. Supp. 2d at 227 ("Although the PEOPLES mark has developed a secondary meaning in the specific neighborhoods [where] Peoples Federal operates, the term is a common one in the banking industry as a whole.").  This is not an improper consideration in a distinctiveness analysis. See 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:69 (4th ed. 2011) [hereinafter, McCarthy] ("If others are in fact using the term to describe their goods or services, an inference of descriptiveness can be drawn . . . . 'If [a word or syllable] has been frequently

[used in similar merchandise], the inference is warranted that it is not purely arbitrary; that it would be likely to be understood by purchasers as identifying or describing the merchandise itself, rather than the source thereof and hence as having little or no trademark significance.'" (quoting Shoe Corp. of Am. v. Juvenile Shoe Corp., 266 F.2d 793, 796 (Cust. & Pat. App. 1959)).

Finally, Peoples Federal argues that the district court failed to give proper presumptive weight to its six Massachusetts trademark registrations. See Mass. Gen. Laws ch. 110H, § 5(b) (registration of a mark in Massachusetts is, "when introduced in any action, prima facie evidence of the registrant's exclusive right to use the registered mark in [the] commonwealth on goods or services specified in the registration"). Peoples Federal argues that this statutory provision shifted the burden to the accused infringer (here, People's United) to prove descriptiveness. See 3 McCarthy § 22:1 (where state law indicates registration is prima facie evidence of ownership and validity of the mark, "[t]he burden is on the challenger to rebut the presumption of validity"). However, even if such a presumption applies in these circumstances (a matter on which we take no view), a fair reading of the record supports the district court's finding that there was sufficient evidence to rebut such a presumption. Principally, the fact that another Massachusetts bank (PeoplesBank) had already registered a mark that includes the dominant word "Peoples," and which

"substantially outdates" Peoples Federal's registrations, directly controverts the proposition that the registration is valid. This, in addition to other evidence that belied Peoples Federal's contention of senior usage, i.e., prior use of the PEOPLES mark by other banks in the area, supported the district court's determination. There was therefore no clear error in the court's assessment that the state registration was not presumptively valid and, hence, that the mark was not inherently distinctive.

### III.  Conclusion

We find that the district court did not err in its assessment of the record; nor did it misapprehend applicable legal principals or otherwise abuse its discretion. Because its determinations as to likelihood of success on the merits were correctly reached, we reject Peoples Federal's alternative argument that the district court's erroneous findings on the first preliminary injunction factor improperly colored its conclusions as to the other three.

For the foregoing reasons, we affirm the district court's denial of preliminary injunctive relief.

**Affirmed**.