# United States Court of Appeals
## For the First Circuit

No. 12-1659

SWAROVSKI AKTIENGESELLSCHAFT;
SWAROVSKI NORTH AMERICA LIMITED,

Plaintiffs, Appellees,

v.

BUILDING #19, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin,[*] Circuit Judge,
and Woodlock,[**] District Judge.

Michael C. Gilleran with whom Michael D. Riseberg, Jeffrey K. Techentin, Rory Z. Fazendeiro and Adler Pollock & Sheehan P.C. were on brief for appellant.
Robert K. Taylor with whom Partridge Snow & Hahn LLP was on brief for appellees.

January 9, 2013

---

[*] Judge Boudin heard oral argument in this matter, and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

[**] Of the District of Massachusetts, sitting by designation.

**Per Curiam**.   Defendant-appellant Building #19, Inc. appeals from the entry of a preliminary injunction restricting its use of the word "Swarovski" in newspaper advertising to a certain font size.   The case is ongoing in the district court, with requests for permanent injunctive relief pending.   The dispute began when Building #19 obtained a number of Swarovski crystal figurines that it hoped to resell, and in order to promote the sale designed a newspaper advertisement emblazoned with the name "Swarovski" in large print font.   Alerted to the proposed advertisement, Swarovski Aktiengesellschaft and Swarovski North America Limited (collectively, "Swarovski") sought a preliminary injunction barring Building #19 from using the Swarovski name or mark in its advertising.   After a hearing, the district court issued an oral opinion that granted the preliminary injunction in part by limiting Building #19's use of the Swarovski name to a much smaller font size.

Building #19 is an off-price retail store that acquires products through secondary, non-traditional channels and then resells them at discounted prices in its 11 stores located throughout New Hampshire, Massachusetts and Rhode Island.   The business is known by its motto, "Good Stuff Cheap," and aside from Swarovski crystal figurines, Building #19 has previously acquired and resold brand-name collectible merchandise made by companies such as Thomas Kinkade and M.I. Hummel.   Building #19 spends

millions of dollars on newspaper advertising in New England to market itself as a vendor of salvage, overstock and discontinued merchandise--these ads often feature descriptions of the advertised goods alongside humorous cartoons.

Swarovski is a world-famous manufacturer and distributor of crystal, jewelry and other luxury products. It holds several registered federal trademarks for the mark "Swarovski," which it has used in the United States since at least 1969. Swarovski monitors and polices the use of its mark through a dedicated anti-infringement unit. It sells its crystal products online, in Swarovski retail stores (including stores in New Hampshire, Massachusetts and Rhode Island), in small independent retailers and in authorized national retailers such as Macy's, Bloomingdale's and Nordstrom. Swarovski merchandise may also be purchased through secondary channel re-sellers, eBay and other discount retailers.

In December 2011, Building #19 acquired a number of Swarovski crystal figurines, with a total retail value of approximately $500,000, from an insurer's salvage sale after a severe storm damaged the warehouse where they had been stored by their prior owner. The figurines were apparently unaltered and free from damage, and came boxed in their original packaging with the Swarovski Certificate of Authenticity. Although industry practice varies, in this case the salvor placed no restrictions on Building #19's ability to use the "Swarovski" name or product

label.  Swarovski itself never directly authorized Building #19 to use its trademark or name.

That same month, Building #19 conducted two, one-day-only sales of its Swarovski merchandise.  It promoted the events through newspaper advertisements, one of which was headlined with the word "SWAROVSKI" in extra-large, capitalized, bold, and distinctive lettering.  The bodies of the ads included cartoons of a tornado wrecking a warehouse, several pictures of crystal figurines, a list of the available items along with their prices and other text describing the details of the sale.  The name "Building #19" also appeared at the bottom of the advertisements in extra-large, capitalized, bold and distinctive lettering.  At the events themselves, Building #19 set up a separate, roped-off display and sales area for the crystal along with various decorations featuring the word "Swarovski."

On December 7, 2011, Swarovski sent Building #19 a cease and desist letter objecting to the ads, and a week later, on December 14, Swarovski filed a complaint against Building #19 in the United States District Court for the District of Rhode Island. It alleged various claims for trademark infringement and unfair competition under the Lanham Act and Rhode Island statutory and common law.  In response, Building #19 agreed to voluntarily refrain from further advertising or sale of the Swarovski crystal in its possession.

All was well until April 5, 2012, when Building #19 provided Swarovski with a copy of a proposed newspaper advertisement that it intended to run to promote a Mother's Day sale of its remaining Swarovski crystal, and invited Swarovski to suggest any further steps it could take to avoid consumer confusion. The advertisement came crowned with a headline that read "ONE DAY EVENT 11AM to 8PM, Tornado Hits Warehouse containing GENUINE SWAROVSKI(R) CRYSTAL Collectibles." The word "Swarovski" appeared in extra-large, capitalized, bold and distinctive font. Like the previous ads, the body of the advertisement contained several images and text giving details on the sale. The name "Building #19" ran at the bottom of the add in extra-large, capitalized, bold and distinctive font. A disclaimer, in much smaller, unbolded font, also appeared near the bottom of the ad, reading: "Disclaimer: Building #19 is selling GENUINE SWAROVSKI(R) CRYSTAL products *BUT* Building #19 is *NOT* an authorized dealer, has no affiliation, connection or association with SWAROVSKI(R) and the standard SWAROVSKI(R) limited warranty is not available to our customers. (The lawyers told us we should add that big 'but'....)."

In response, Swarovski filed a motion for a preliminary injunction to forbid Building #19 from: (1) using the Swarovski trademark or name or any other marks or names or logos confusingly similar thereto in advertisements, in-store promotions, customer

cards or signage of any kind, and (2) doing any act likely to induce the mistaken belief that Swarovski products or services are in any way affiliated, connected or associated with or sponsored by Building #19, including creating display areas tending to imply a "store within a store" event.

On May 1, 2012, the district court held an evidentiary hearing on Swarovski's motion, during which it heard arguments from counsel as well as witness testimony from several Building #19 employees and two Swarovski employees who attended the first crystal sale. After a brief recess, the district court acknowledged the need for an expedited determination, due to Building #19's wish to advertise before Mother's Day on May 13, and so the court departed from its usual practice of issuing a written decision and instead engaged "in a little more rough justice by providing an oral decision today." Ultimately, the court granted Swarovski's motion only to the extent that the capitalized word "Swarovski" at the top of the proposed advertisement could be no larger than the font used for the name "Swarovski" in the disclaimer at the bottom of the proposed advertisement. Neither party raised any objection to this decision at the time.

Building #19 now appeals the district court's order, arguing that it failed to include the necessary findings (1) that its use of the "Swarovski" mark was likely to confuse consumers and (2) that Swarovski would suffer irreparable harm as a result of its

use of the mark.  We agree, and therefore reverse the grant of the injunction and remand so that the district court may make further findings on these points.

A district court faced with a motion for a preliminary injunction must weigh four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest."  United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007).  We review a district court's grant of a preliminary injunction for abuse of discretion.  See Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 9 (1st Cir. 2012).  Within that framework, we review fact findings for clear error and issues of law de novo.  Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008).

We begin with the district court's approach to the first prong of the preliminary injunction analysis, Swarovski's likelihood of success on its infringement claim against Building #19, because while each of the four factors is important, "the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits."  Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).  This is so especially in a trademark infringement case, since "the resolution

of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement." Id.

To establish infringement successfully, a trademark plaintiff must demonstrate that the defendant used an imitation of its protected mark in commerce in a way that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (2006).[1] Historically, the subject of trademark "confusion" has been the source of the good or service to which the mark is attached. See New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 305 (9th Cir. 1992). For instance, a shoddy crystal manufacturer might label its goods "Swarovski" or something similar in order to fool consumers into thinking they were buying the luxury product. "The typical situation in a trademark case involves the defendant's having passed off another's mark as its own or having used a similar name, confusing the public as to precisely whose goods are being sold." Century 21 Real Estate Corp. v. LendingTree, Inc., 425 F.3d 211, 217 (3rd Cir. 2005). In this circuit, we evaluate the likelihood of such confusion through

---

[1]A successful infringement action requires the plaintiff to prove both (1) that its mark merits protection and (2) that the allegedly infringing use of its mark is likely to result in consumer confusion. Borinquen Biscuit Corp., 443 F.3d at 116. Because both parties apparently agree that the "Swarovski" mark merits protection, we focus only on the question of whether Building #19's use of that mark was likely to confuse consumers.

-8-

the eight-factor analysis laid out in Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482 (1st Cir. 1982).[2]

But the "confusion" at issue in this case is of a different kind. Building #19 has not labeled its own products with the "Swarovski" mark, but instead wants to use the "Swarovski" mark to describe actual Swarovski crystal. Because some trademarked products are so well-known and so unique, "many goods and services are effectively identifiable only by their trademarks." New Kids on the Block, 971 F.2d at 306. As the district court found, Swarovski crystal is among them. Unlike typical trademark infringement, where the defendant uses the plaintiff's mark to refer to the defendant's product, this so-called "nominative use" involves Building #19's use of Swarovski's mark to refer to Swarovski's own product.[3] Id. at 308.

---

[2]The eight factors are: (1) the similarity of the marks, (2) the similarity of the goods, (3) the relationship between the parties' channels of trade, (4) the relationship between the parties' advertising, (5) the classes of prospective purchasers, (6) the evidence of actual confusion, (7) the defendant's intent in adopting the mark and (8) the strength of the plaintiff's mark. Pignons, 657 F.2d at 487-91.

[3]"Nominative use" may also include situations where the defendant ultimately describes his own product, so long as his use of the mark is in reference to the plaintiff's product. For instance, a car mechanic who specializes in Volkswagens might put the word "Volkswagen" in an advertisement; he makes nominative use of the word in reference to another's product, but he does so in order to describe his own service. See Century 21 Real Estate Corp., 425 F.3d at 214, 218 (citing Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350 (9th Cir. 1969)).

The potential for confusion in a nominative use case is not one of source--here, the crystal really was manufactured by Swarovski--but rather one of <u>endorsement or affiliation</u>. The fear is that a consumer glancing at Building #19's proposed advertisement might mistakenly believe that Swarovski had some official association with the sale; perhaps that Swarovski sponsored the sale and so stood behind the goods as a direct seller, or that it had partnered with Building #19 in a way that might detract from its luxury status. <u>See</u> <u>Century 21 Real Estate Corp.</u>, 425 F.3d at 221; <u>New Kids on the Block</u>, 971 F.2d at 308.

Because this kind of confusion does not implicate the traditional "source-identification function" of a trademark, <u>id.</u>, other circuits, most notably the Ninth and the Third, have developed a distinct "nominative fair use" analysis to identify unlawful infringement in cases like this one.[4] Although these courts differ on the precise articulation of the doctrine and on whether it should replace the standard likelihood-of-confusion analysis or should serve as an affirmative defense, they generally evaluate the lawfulness of a defendant's nominative use of a mark through the lens of three factors: (1) whether the plaintiff's product was identifiable without use of the mark; (2) whether the

_____

[4]<u>See, e.g.,</u> <u>Century 21 Real Estate Corp.</u>, 425 F.3d at 220; <u>New Kids on the Block</u>, 971 F.2d at 308; <u>see also</u> <u>Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.</u> v. <u>Smack Apparel Co.</u>, 550 F.3d 465, 489 (5th Cir. 2008), <u>cert. denied</u>, 556 U.S. 1268 (2009).

defendant used more of the mark than necessary; and (3) whether the defendant accurately portrayed the relationship between itself and the plaintiff. See Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175-76 (9th Cir. 2010); Century 21 Real Estate Corp., 425 F.3d at 222. In the First Circuit, we have recognized the "underlying principle" of nominative fair use, but like several other circuits, we have never endorsed any particular version of the doctrine. See Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 424 (1st Cir. 2007); see also Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 154-55 (4th Cir. 2012); Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102-03 (2d Cir.), cert. denied, 131 S. Ct. 647 (2010); Paccar v. Telescan Techs., L.L.C., 319 F.3d 243, 256-57 (6th Cir. 2003).

Given the uncertainty in this area of the law, the district court made an admirable attempt to evaluate the likelihood that Swarovski would succeed on its infringement claim against Building #19. Ultimately, however, the district court's opinion, perhaps because it was delivered to provide an expedited resolution of the interlocutory motion contemporaneously with the hearing, did not include a finding on whether Building #19's use of the "Swarovski" mark in its proposed advertisement was likely to confuse consumers in order to support the issuance of the

preliminary injunction.[5]  Nor are we able to infer such a finding
from the court's reasoning.

There is a need for greater clarity on the matter of
likely confusion in this case.  A trademark holder's claim over his
mark extends to uses of the mark "likely to cause confusion, or to
cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a); see also 4
McCarthy on Trademarks and Unfair Competition § 23:1 (4th ed. 2012)
(describing likelihood of confusion as the "[k]eystone" of
trademark infringement).  Swarovski may not charge infringement
against all unauthorized uses of the "Swarovski" name, but only
those uses likely to cause consumer confusion, mistake or
deception.  The Supreme Court has made clear that a trademark
infringement action "requires a showing that the defendant's actual
practice is likely to produce confusion in the minds of consumers,"
with the burden placed firmly on the plaintiff.  KP Permanent Make-
Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117-18
(2004).  Without such a showing, no trademark infringement has
occurred and so the trademark holder has no cause of action.

In this case, there is no indication from the record that
the district court found a likelihood of confusion either under the
traditional eight-factor Pignons test or under the nominative fair

---

[5]The determination of likely confusion is a question of fact,
Bos. Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc., 9 F.3d
175, 183 (1st Cir. 1993), which on appeal we ordinarily review for
clear error, Bos. Duck Tours, 531 F.3d at 15.

-12-

use test. The court first stated that Swarovski had tried to "shoehorn" this case into the analysis laid out in Pignons, but that Pignons "was a very different case from this." The court then applied the Pignons analysis, as it felt it was required to do by our precedent. It found that only the first, second and eighth factors weighed in Swarovski's favor,[6] while the third, fourth, fifth, sixth and seventh factors either benefitted Building #19 or did not help either party.[7] The court ultimately concluded that it was "not so sure that Plaintiff met its burden under the Pignons test." While this statement may not be a negative finding on the matter, it certainly does not indicate a positive finding that Swarovski had met its burden under the traditional Pignons confusion test.

---

[6]For the first two factors, the court observed that Building #19 was clearly using the "Swarovski" name (although not its logo) and selling authentic Swarovski goods. For the eighth factor, the court noted that the Swarovski mark was strong and prevalent.

[7]The court found that the third and fourth factors weighed in favor of Building #19, since Swarovski sells only online or through high-end retail stores, while Building #19 is an off-price discounter brick-and-mortar store that advertises in the local press. It found that the fifth factor, the classes of prospective purchasers, was a "wash," since Building #19 admitted to targeting high-end buyers. For the sixth factor, the evidence of actual confusion, the court noted that there was only one piece of disputed, arguably hearsay, evidence, and that it "questioned whether it was accurately recounted here." And in regard to the seventh factor, Building #19's intent in adopting the mark, the court observed that Building #19 had not adopted the mark, but instead was utilizing the name "Swarovski" simply to describe the items that it was selling.

The court next analyzed the advertisement through the three nominative fair use factors, as Building #19 urged it to do in its opposition motion to Swarovski's motion for a preliminary injunction, and which the court believed were more appropriate to the facts of this case. Yet the court never explained if it was using those factors to measure the likelihood of consumer confusion. The court described the three nominative fair use factors as: (1) whether "the product [was] readily identifiable without use of the mark," (2) whether the defendant "utilize[d] more of the mark than [was] necessary," and (3) whether the defendant "falsely suggested that [it] was sponsored or endorsed by the trademark holder." It found that the first and third factors weighed in favor of Building #19: Swarovski crystal was not readily identifiable without use of the "Swarovski" name, and the proposed ad made clear the product's origin, how it came into the hands of Building #19 and that the sale was not sponsored by Swarovski. Presumably, then, these factors did not suggest a likelihood of confusion to the district court.

In its application of the second factor, on which its decision against Building #19 must have turned, the district court stated that in the headline of the proposed advertisement, "the name Swarovski is larger than any other font in that ad. It's larger than the name Building #19. It's larger than the words 'one-day event.' It is clearly, I think, more use of the mark than

-14-

is necessary to make the point." Nevertheless, the court apparently believed that the font and size of the word "Swarovski" as it appeared in the advertisement's disclaimer was sufficient to attract the attention of anyone reading the advertisement. The court concluded that "Defendant has some issues with its burden under the nominative fair use test because I think that they are wanting to use more of the mark than is necessary to describe the product."

This analysis does not mention consumer confusion, but merely decided that Building #19 used "more of the mark than necessary" to effectively communicate its message. But as we have explained, a trademark holder has no right to police "unnecessary" use of its mark. Whether necessary or not, a defendant's use of a mark must be <u>confusing</u> in the relevant statutory sense for a plaintiff to raise a viable infringement claim. <u>See</u> <u>Prestonettes, Inc.</u> v. <u>Coty</u>, 264 U.S. 359, 368 (1924) (Holmes, J.) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo."); <u>Dow Jones & Co., Inc.</u> v. <u>Int'l Sec. Exch., Inc.</u>, 451 F.3d 295, 308 (2d Cir. 2006) ("While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name,

so long as the trader does not create confusion by implying an affiliation with the owner of the product.").

The word "Swarovski" in the headline of Building #19's proposed advertisement might, in theory, have created confusion in a number of ways: it might have made the ad look like one from Swarovski rather than Building #19; it might have lead viewers to believe that Swarovski endorsed or sponsored the sale; or it might have suggested some official affiliation between Swarovski and Building #19.  But the district court referenced none of these possibilities in its analysis; instead, it simply applied the second nominative fair use factor in order to restrict Building #19's use of the word "Swarovski" to the minimum font size necessary to convey its message.[8]

Part of the difficulty may have stemmed from the fact that different circuits use the doctrine to measure different concepts.[9]  In the Ninth Circuit, the three factors are applied to

---

[8]The district court did make brief references to the likelihood of confusion in its questioning of counsel and when introducing the nominative fair use test ("But what evidence is there of confusion?"; "[U]nder this test, the likelihood of confusion is evaluated by determining three factors . . . "), but they do not support Swarovski's contention that the district court made a finding on confusion.

[9]The district court did suggest that it was following the lead of Tiffany (NJ), Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010) in applying the nominative fair use analysis, but Tiffany did "not address the viability of the [nominative fair use] doctrine" and instead applied existing Second Circuit precedent to resolve the case.  Id. at 102.

determine confusion; they "replace[]" the traditional likelihood of confusion analysis "as the proper test for likely consumer confusion whenever defendant asserts to have referred to the trademarked good itself." Toyota Motor Sales, 610 F.3d at 1182 (internal quotation marks omitted). But in the Third Circuit, the three factors "demonstrate fairness"; once the plaintiff has proven likely confusion through the traditional analysis, the defendant may invoke the nominative fair use factors to show that its use of the mark was fair. Century 21 Real Estate Corp., 425 F.3d at 222 (emphasis added).

We are especially wary here because the court's conclusion that Building #19 "has some issues with its burden under the nominative fair use test" suggests that it had the Third Circuit's "affirmative defense" iteration of the doctrine in mind. See id. As we explained above, the Third Circuit applies the nominative fair use factors to measure fairness, not confusion, and a defendant's failure to meet its burden under that version of the test means nothing if the plaintiff has not first demonstrated a likelihood of confusion through the traditional analysis. See id. ("Once plaintiff has met its burden of proving that confusion is likely, the burden then shifts to defendant to show that its nominative use of plaintiff's mark is fair.").

Without at this time endorsing any particular approach to the nominative fair use doctrine, it is enough to observe that

whether the factors serve as the plaintiff's case-in-chief (as appears to be true in the Ninth Circuit)[10] or as an affirmative defense (as in the Third)[11] a trademark defendant has no burden to prove anything until the plaintiff has first met its responsibility to show infringement by demonstrating that the defendant's use of its mark is likely to confuse consumers. Cf. KP Permanent Make-Up, Inc., 543 U.S. at 120 ("[I]t is only when a plaintiff has shown likely confusion by a preponderance of the evidence that a defendant could have any need of an affirmative defense.").[12] The district court erred by granting Swarovski's request for a preliminary injunction without first finding that Building #19's use of its mark in the proposed advertisement was likely to cause confusion.

---

[10] Toyota Motor Sales, 610 F.3d at 1182-83.

[11] Century 21 Real Estate Corp., 425 F.3d at 220-22.

[12] Swarovski offers a final reason for affirming the district court on this point, suggesting that because Building #19 proposed to the district court that it apply the nominative fair use test, Building #19 either is estopped from challenging it on appeal or has waived its right to do so. See Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010) (judicial estoppel); Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 56 n.7 (1st Cir. 1995) (waiver). But this argument misapprehends Building #19's challenge to the district court's order; Building #19 does not contend that the court should have applied an analysis other than the nominative fair use test, but rather that the court applied the test incorrectly. On appeal, it is not estopped from arguing, nor has it waived its right to argue, that the district court misapplied the nominative fair use doctrine.

This problem is related to the second ground for Building #19's appeal: the absence of an irreparable injury finding. Even though likelihood of success is "the cynosure" of the preliminary injunction test, Borinquen Biscuit Corp., 443 F.3d at 115, irreparable harm is still one of the four required elements for a preliminary injunction. See Weikert, 504 F.3d at 5.

Swarovski suggests that the court did consider the likelihood of irreparable harm, since it noted at the beginning of its decision that "because this is Plaintiffs' motion, Plaintiff bears the burden of demonstrating the four elements of a preliminary injunction." Swarovski also highlights evidence presented in the hearing that its luxury brand reputation would suffer as a result of its association with Building #19. But, there was no formal finding of irreparable harm, and that is consonant with the lack of any finding of confusion. Without an explanation by the district court, there is no indication in the record that the court concluded that Swarovski would suffer irreparable harm if it allowed the advertisement to run as proposed.

Swarovski also emphasizes that in the First Circuit, a trademark plaintiff seeking a preliminary injunction who demonstrates likely confusion creates a presumption of irreparable harm. See Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 3 (1st Cir. 1997) (citing Societe Des Produits

Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992); Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989); Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 14-15 (1st Cir. 1986)). In the past, we have applied this presumption because "[b]y its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated. Hence, irreparable harm flows from an unlawful trademark infringement as a matter of law." Societe Des Produits Nestle, S.A., 982 F.2d at 640. But the recent Supreme Court decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393-94 (2006) has threatened the continuing viability of this presumption. We briefly discuss the argument, although it does not apply in the absence of a finding of confusion.

In eBay, the Court reviewed a request for a permanent injunction in a patent infringement dispute, and held that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." Id. at 394. The Court therefore rejected the general rule applied by the Court of Appeals that an injunction should issue once patent infringement has been established, and

-20-

warned lower courts away from applying "broad classifications" or "categorical rule[s]" that would pervert the traditional four-factor test. Id. at 393-94. However, two concurrences respectively by Chief Justice Roberts and Justice Kennedy, separately joined by a total of seven justices, suggested that such rules could survive as "lesson[s] of . . . historical practice" that might inform the district courts' equitable discretion "when the circumstances of a case bear substantial parallels to litigation the courts have confronted before." Id. at 395-97 (Kennedy, J., concurring); see also id. at 394-95 (Roberts, C.J., concurring).

Since then, we have said that there is "no principled reason why [eBay] should not apply" to a request for a preliminary injunction to halt trademark infringement, despite the difference in context. Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 33 (1st Cir. 2011). However, we have so far declined to address whether eBay's bar on "general" or "categorical" rules includes the presumption of irreparable harm in trademark disputes. See id. at 34. Building #19 urges us to address the issue now, and to hold, as other circuits have done in patent and copyright infringement cases,[13] that for preliminary injunctions in trademark infringement suits, eBay prohibits a

---

[13]No circuit court has yet decided whether eBay abolishes the presumption of irreparable harm in trademark infringement cases.

-21-

presumption of irreparable harm based on a showing of likely success on the merits. See Robert Bosch LLC v. Pylon Manuf. Corp., 659 F.3d 1142, 1149 (Fed. Cir. 2011) (patent infringement); Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 981 (9th Cir. 2011), cert. denied, 132 S. Ct. 1713 (2012) (copyright infringement); Salinger v. Colting, 607 F.3d 68, 76-78 (2d Cir. 2010) (copyright infringement).

But we need not decide that question to decide this case. Whether or not the presumption of irreparable harm remains viable in this context, it is difficult to see how irreparable harm could be established without a finding of confusion, and so the district court's decision did not include adequate findings to support its grant of the injunction against Building #19. Cf. Am. Bd. of Psychiatry and Neurology, 129 F.3d at 3 ("[A] trademark plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm.") (emphasis added).

In further proceedings on the claims for permanent injunctive relief, the district court might conclude, as Swarovski suggests in its brief, that Swarovski has presented sufficient evidence to establish irreparable harm to its luxury reputation without the benefit of the presumption, or that the facts of this case are so similar to past cases "that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions." N. Am. Med. Corp. v. Axiom

Worldwide, Inc., 522 F.3d 1211, 1228 (11th Cir. 2008) (citing eBay, 547 U.S. at 394-97 (concurring opinions of Chief Justice Roberts and Justice Kennedy)).

"Where the district court . . . has not addressed a relevant and required issue," we may "remand the case to the district court for further consideration." Bos. Duck Tours, LP, 531 F.3d at 15. In this case, the district court did not include the necessary findings, first, on whether Swarovski was likely to succeed in its infringement claim against Building #19 by establishing that the proposed advertisement was likely to confuse consumers, and second, on whether Swarovski would suffer irreparable harm as a result of the ad. Because affirmative findings on both questions are required for a district court to issue a preliminary injunction, see Weikert, 504 F.3d at 5, we reverse the preliminary injunction against Building #19 and remand the case to the district court for further proceedings on the remaining claims for relief consistent with this opinion.

It is so ordered.